## WILLIAM S. DENNY *vs.* CHARLES MATTOON & others.

The legislature have no power to confirm proceedings in insolvency, commenced by petition of creditors, and had before a person claiming to act as judge of insolvency, but with no title to the office, and which have been adjudged invalid by a decree of this court.

PETITION by a creditor of Henry D. Stone of Worcester, an insolvent debtor, originally filed against the judge of probate and insolvency for the county of Franklin, praying for the dissolution of an injunction upon proceedings in insolvency against Stone, and for an order requiring the respondent to act upon a petition presented to him by the petitioner, in which the petitioner asked that a dividend might be declared on Stone's estate. The facts were as follows:

VOL. II. 31

On the 9th of February 1858, Josiah H. Clark and James S. Pinkham, creditors of Stone. filed in the court of insolvency for the county of Worcester their petition, addressed to the judge of that court, and praying, for reasons therein set forth, that a warrant might issue against the estate of Stone, as an insolvent debtor. The office of judge of insolvency for that county, and also for the county of Franklin, which was the county adjoining which had the least number of inhabitants, was then vacant; and Horace I. Hodges, judge of that court for the county of Hampshire, which was the county adjoining Franklin, having such least number, and also adjoining Worcester, having such least number, except Franklin, was present, and undertook to act upon the petition, and, after notice and a hearing, issued his warrant under the seal of the court of insolvency, according to the prayer of the petition, and subsequently various claims, including that of the present petitioner, were proved against the estate, and William M. Bickford and Fitzroy Willard were chosen assignees. Henry Chapin was afterwards appointed judge of probate and insolvency for the county of Worcester, but was disqualified to act in the case by reason of interest; and Charles Mattoon, who in the mean time had been appointed to the office for the county of Franklin, acted as judge in the case after the 1st of July 1858. On the 31st of May 1859, the President, Directors & Co. of the Grafton Bank, creditors of Stone, who had an attachment upon his property, made prior to February 9th 1858, filed in this court a bill in equity against the assignees and the acting judge, alleging that the proceedings in the case were invalid, for want of jurisdiction by Judge Hodges to act therein; upon which an injunction against further proceedings in the case was granted, and, upon a full hearing of the parties to the bill, the proceedings were adjudged invalid, and the injunction was made perpetual, by a decree dated February 4th 1860. See *Grafton Bank* v. *Bickford*, 13 Gray, 564. On the 10th of February 1860, involuntary proceedings in insolvency were instituted against Stone, before Judge Mattoon, by other creditors whose claims had been proved under the former proceedings, and a warrant was issued, and, on the 24th of that month, E. B

Stoddard and Josiah H. Clark were chosen assignees, and on the same day, having notice of the former proceedings, received a deed of assignment of his estate. On the 14th of March 1860, " an act to legalize certain proceedings in insolvency for the counties of Worcester and Franklin " was passed by the legislature of the Commonwealth, *St.* 1860, *c.* 78, as follows : " All proceedings heretofore instituted or had in any case of insolvency within the counties of Worcester or Franklin, before Horace I. Hodges, judge of insolvency for the county of Hampshire, so far as the same may want effect or validity by reason that said Hodges had not jurisdiction, or was not properly authorized to sit therein, under the fifth section of the two hundred and eighty-fourth chapter of the acts of eighteen hundred and fifty six, are hereby confirmed, and the same shall be taken and deemed good and valid in law, to all intents and purposes whatsoever." It appeared in the case that Judge Hodges acted as judge of insolvency in numerous cases in the counties of Franklin and Worcester, during the time while a vacancy in the office existed in those counties.

On the 10th of May 1860, the present petitioner presented to Judge Mattoon a petition setting forth that he was a creditor of Stone's estate and had proved his claim under the original proceedings, and that the assignees chosen under the same had funds in their hands, over and above their expenses and charges, and praying that a dividend might be ordered to be paid by them. The judge declined to take any action upon the petition, on account of the injunction upon him, which had not been dissolved. The petitioner then filed in this court the present petition, upon which a general notice was ordered to all parties interested. In pursuance of this notice, Henry H. Chamberlin and Alice C. Earle, who held conveyances, under the first assignees, of real estate of great value, which were taken before the petition of the Grafton Bank was filed, and before any doubts were raised as to the validity of the proceedings, and the President, Directors & Co. of the Grafton Bank, appeared and were heard in the case. Various other parties held conveyances of property, under each set of assignees.

The case was argued in Boston in June 1861, by special assignment.

*G. F. Hoar,* for H. H. Chamberlin. In England, an order annulling a fiat, and a writ of supersedeas thereon, do not operate as a final disposition of the case, but it is still within the power of the court to revive the proceedings, for good cause shown, on the application of any person interested. 1 Deacon on Bankruptcy, (De Gex ed. 1848) 871–873. *Ex parte Lawrence,* De Gex, 269, 273. *Ex parte Ellis,* 7 Ves. 135. *Ex parte Young,* 1 Mont. Deac. & De G. 117. *Ex parte Bowler,* Buck, 258, 260, note *a.* The statute in this commonwealth, being substantially in the same words with that of England, should receive the same judicial construction. *St.* 1838, *c.* 163, § 18. *St.* 1 & 2 Will. 4, *c.* 56.

The proceedings in insolvency were in all respects regular, except that the warrant was issued by a judge who had no authority in the county of Worcester; and his assumption of authority has since been ratified and confirmed by *St.* 1860, *c.* 78, which act is valid and constitutional. It is no exercise of judicial power. It does not declare, but creates or completes rights. It does not deprive the subject of his property, but by the law of the land. The "law of the land" includes the usual and customary exercise of legislative power. An uninterrupted course of judicial decisions has recognized the power to legislate for the purpose of confirming the doings of the law, where its officers have omitted some necessary legal form, or where the proceedings have been according to law, and conducted by persons undertaking to act as officers of the law, but acting without authority, or beyond their jurisdiction; and a long series of legislative acts shows that this power has been exercised by the legislature, and conceded by the courts and the people, from the earliest times. This has been done in cases of conveyances made by officers of the law without authority, and parties under disability; *Res.* 1811, Jan. sess. *c.* 137; June sess. *c.* 21, 24; 1820, Jan. sess. *c.* 65, 104; *St.* 1840, *c.* 97; *Res.* 1845, *c.* 7; 1846, *c.* 21; 1847, *c.* 14, 87, 95; *Sts.* 1850, *c.* 200, § 3; 1851, *c.* 288; 1852, *c.* 41, 86, 185, 256: *Res.* 1853, *c.* 48; *St.* 1857

*c.* 298 ; of certain wills defectively executed : *St.* 1838, *c.* 2 ; of doings of courts beyond their jurisdiction : *Res.* 1818, Jan. sess. *c.* 92 ; 1826, Jan. sess. *c.* 87 ; *Sts.* 1842, *c.* 14 ; 1852, *c.* 185 1853, *c.* 410 ; of doings of persons assuming without right to act as judicial or executive officers of the law : *Res.* 1811, Jan. sess. *c.* 56 ; 1818, Jan. sess. *c.* 113 ; 1826, Jan. sess. *c.* 81 ; *Sts.* 1849, *c.* 116 ; 1850, *c.* 7 ; 1853, *c.* 115 ; 1859, *c.* 112 ; 3 Special Laws, 481 ; of wrongful assessment of taxes ; *Res.* 1829, Jan. sess. *c.* 46 ; *St.* 1838, *c.* 71 ; *Res.* 1847, *c.* 48 ; *Sts.* 1856, *c.* 147, 149 ; 1858, *c.* 99. See also, *Res.* 1806, June sess. *c.* 4, 17 ; 1807, Jan. sess. *c.* 13 ; 1808, Jan. sess. *c.* 145 ; 1809, Jan. sess. *c.* 277 ; June sess. *c.* 1, 14, 50 ; 1810, Jan. sess. *c.* 64, 82, 83, 99, 108, 111, 138 ; 1811, Jan. sess. *c.* 44, 68, 81, 90 ; June sess. *c.* 13, 14 ; 1812, Jan. sess. *c.* 88, 92, 95, 97, 98, 100, 111, 112, 122 ; 1813, June sess. *c.* 4, 6, 36 ; 1814, June sess. *c.* 2, 6, 11, 15, 21, 25, 47 ; Oct. sess. *c.* 82 ; 1815, Jan. sess. *c.* 118, 119, 124, 126, 129, 135, 155 ; 1816, Jan. sess. *c.* 81, 83, 84, 91, 97, 105, 121, 128, 197 ; 1819, June sess. *c.* 7, 14, 16, 18, 19, 21, 27, 30, 31, 33 ; 1822, Jan. sess. *c.* 65, 84 ; 1828, Jan. sess. *c.* 42, 61 ; 1829, June sess. *c.* 10 ; 1831, Jan. sess. *c.* 70 ; 1834, *c.* 42, 77 ; 1836, *c.* 33, 70 ; 1838, *c.* 54, 84 ; 1839, *c.* 21, 51 ; *St.* 1844, *c.* 45 ; *Res.* 1846, *c.* 52 ; 1847, *c.* 3, 4, 67 ; 1849, *c.* 46 ; *Sts.* 1849, *c.* 178 ; 1850, *c.* 100, § 2 ; *Res.* 1850, *c.* 68 ; 1851, *c.* 50 ; *Sts.* 1851, *c.* 32 ; 1852, *c.* 1, 9, 51 ; 1853, *c.* 393 ; 1855, *c.* 132 ; 1859, *c.* 264 ; 1860, *c.* 81, 104, 131 ; 1 Special Laws, 49, 76, 119 ; 2 Ib. 96. See also *Wildes* v. *Van Voorhies*, 15 Gray, ; *Davison* v. *Johonnot*, 7 Met. 388 ; *Walter* v. *Bacon*, 8 Mass. 468 ; *Patterson* v. *Philbrook*, 9 Mass. 151 ; *Locke* v. *Dane*, 9 Mass. 360 ; *Foster* v. *Essex Bank*, 16 Mass. 245 ; *Rice* v. *Parkman*, Ib. 326 ; *Simmons* v. *Hanover*, 23 Pick. 188 ; *Sohier* v. *Massachusetts General Hospital*, 3 Cush. 492.

There are two grounds on which this legislation may logically be vindicated. 1. Every citizen who acquires or holds interests in property, takes and holds them with knowledge of, and subject to, a liability to be affected by this kind of legislation. Such power is one of the accustomed and essential powers of the sovereignty of the state ; and without it the condition of

31 *

things under a written constitution would be intolerable. 2. This legislation may be compared to the subsequent ratification of the acts of an assumed agent by the authority which has the lawful power of appointment. *Wilkinson* v. *Leland*, 2 Pet. 627. The second assignees accepted their trust with abundant notice of the prior proceedings, and took rights subject to legislative control, and to the original petition, which was duly filed with the register of insolvency.

For analogous cases, in which the exercise of a similar power has been recognized, see *Calder* v. *Bull*, 3 Dall. 389 ; *Satterlee* v. *Matthewson*, 2 Pet. 413 ; *Watson* v. *Mercer*, 8 Pet. 88 ; *Kearney* v. *Taylor*, 15 How. (U. S.) 494 ; *Mather* v. *Chapman*, 6 Conn. 54 ; *Beach* v. *Walker*, Ib. 197 ; *Goshen* v. *Stonington*, 4 Conn. 209 ; *Richardson* v. *Monson*, 23 Conn. 94 ; *Syracuse City Bank* v. *Davis*, 16 Barb. 188 ; *Underwood* v. *Lilly*, 10 S. & R. 97 ; *Tate* v. *Stooltzfoos*, 16 S. & R. 35 ; *Hepburn* v. *Curts*, 7 Watts, 300 ; *Menges* v. *Wertman*, 1 Penn. State R. 218 ; *Estep* v. *Hutchman*, 14 S. & R. 435 ; *Trustees* v. *McCaughy*, 22 Ohio, 152.

The provision of the constitution that no subject shall be deprived of his life, liberty or estate, but by the judgment of his peers or the law of the land, is copied from *Magna Charta*, c. 29. Yet confirmatory acts, within the limits above defined, are common in England, as may be seen by reference to any common law digest, tit. Confirmation, without ever being supposed to trench upon the principles of *Magna Charta*.

*P. C. Bacon & F. H. Dewey*, for the assignees under the second proceedings. The *St.* of 1860, c. 78, is unconstitutional and void, (1) Because it is an exercise of judicial power. Dec. of Rights, § 30. Sedgwick on Stat. and Const. Law, pp. 666–697. *Rice* v. *Parkman*, 16 Mass. 326. *Davison* v. *Johonnot*, 7 Met. 394. *Holden* v. *James*, 11 Mass. 396. *De Chastellux* v. *Fairchild*, 15 Penn. State R. 18. *Greenough* v. *Greenough*, 11 Penn. State R. 494. *Taylor* v. *Place*, 4 R. I. 339. *People* v. *Supervisors of N. Y.* 2 E. P. Smith (N. Y.) 432. *Dash* v. *Van Kleeck*, 7 Johns. 477, 491. *Lewis* v. *Webb*, 3 Greenl. 332. *Taylor* . *Porter*, 4 Hill (N. Y.) 144. *Parmelee* v. *Thompson*, 7 Hill (N.Y.)

77. *Sohier* v. *Massachusetts General Hospital*, 3 Cush. 493. *Jackson* v. *Frost*, 5 Cow. 350. *Mc Cabe* v. *Emerson*, 18 Penn. State R. 11. *Hayburn's case*, 2 Dall. 410, note. *Pennsylvania* v. *Wheeling & Belmont Bridge Co.* 18 How. (U S.) 431. (2.) Because it deprives a subject of his estate, without the judgment of his peers, or the law of the land. The words "law of the land" mean "due process of law." *Mayo* v. *Wilson*, 1 N. H. 55. 2 Inst. 50. Numerous authorities, English and American, sustain this proposition. This act legislated Stone into insolvency, without a hearing. See *Wynehamer* v. *The People*, 3 Kernan, 378; *Hoke* v. *Henderson*, 4 Dev. (N. C.) 15 ; *Dartmouth College* v. *Woodward*, Webster's argument, 4 Wheat. 581; *Greene* v. *Briggs*, 1 Curt. C. C. 325 ; *Arrowsmith* v. *Burlingim*, 4 McLean, 498; *Murray* v. *Hoboken Land & Improvement Co.* 18 How. (U. S.) 272 ; 2 Story on Const. § 1789. The proceedings against Stone were *in invitum*, and no assent can be presumed. The decree by this court rendered the proceedings under the original petition absolutely void. *Merriam* v. *Sewall*, 8 Gray, 316. *Grafton Bank* v. *Bickford*, 13 Gray, 564. *Penniman* v. *Freeman*, 3 Gray, 245. *Cheshire Iron Works* v. *Gay*, Ib. 531. *Ex parte Freeman*, 1 V. & B. 40. *Ex parte Stokes*, 7 Ves. 409, notes 4 and 5. *Ex parte Jackson*, 8 Ves. 534. *Ex parte Brown*, 1 V. & B. 66. *Twogood* v. *Hankey*, Buck, 67. *Ex parte Leaverland*, 1 Atk. 145. The decree can only be set aside by a bill of review brought for that purpose. *Clapp* v. *Thaxter*, 7 Gray, 384. The statute should be construed as if it contained a proviso that it should not affect cases in which final judgment had been rendered by this court. *Helmore* v. *Shuter*, 2 Show. 16. *Couch* v. *Jeffries*, 4 Burr. 2460. *Dash* v. *Van Kleeck*, 7 Johns. 477. *Call* v. *Hagger*, 8 Mass. 423.

*B. F. Thomas*, (*W. F. Slocum* with him,) for the Grafton Bank. The decree of the court is conclusive, as between the Grafton Bank and the assignees, and any persons claiming under them. *Grafton Bank* v. *Bickford*, 13 Gray, 564. *Stone* v. *Carter*, Ib. 575. *Bigelow* v. *Winsor*, 1 Gray, 299. *Sawyer* v. *Woodbury*, 7 Gray, 499. By it the *status* of Stone was changed from insolvency to solvency. It was in the nature of a judgment

*in rem,* to which all persons interested were parties, or might have become parties; and the question as to the validity of the original proceedings was forever settled. *Merriam* v. *Sewall,* 8 Gray, 316. *Wheelock* v. *Hastings,* 4 Met. 504. The remedy, if any, is by a bill of review; but this petition is neither in form nor substance a bill of review.

The effect of *St.* 1860, *c.* 78, if applied to Stone's case, and if valid, is to review and reverse the decree of this court. The statute should not be construed to extend to cases in which a judicial decree, declaring the proceedings void, had already been entered. There are other cases to which it is applicable, in which no such decree had been entered. *Given* v. *Marr,* 27 Maine, 212. If, however, by the necessary construction of the act, the proceedings in this case are included, the act itself is invalid. There must be some limit to the exercise of the judicial power by the legislature; and it is safe to say that they cannot directly reverse a final judgment of this court, or deprive the parties of the rights acquired under it. The legislature cannot grant a new trial in this court, or compel this court to hear the parties anew; but they have in this case undertaken to grant, without a trial, all the beneficial results which could flow from a new trial. And it is no answer to this position to say that the statute does not reverse the decree of the court in form. By substituting another law for that of the court, by declaring that to be valid which the court had held to be void, they remove the foundation of the decree, and in effect review and overrule it. *McDaniel* v. *Correll,* 19 Illinois, 226. *Taylor* v. *Place,* 4 R. I. 324. *Lewis* v. *Webb,* 3 Greenl. 326. This statute is not within the precedents which have received judicial sanction. In none of the cases cited had the proceedings been declared void by the supreme court.

But, without reference to the decree of the court, *St.* 1860, *c.* 78, was an exercise of judicial power. At the time of its passage, two different sets of proceedings in insolvency had been instituted against Stone, and two sets of assignees were claiming the property. Under these conveyances and contracts had been made, and different titles had accrued. It was a question

of law, which of the parties were rightfully claiming, and thus clearly within the judicial province to determine. The respective parties were entitled to a judicial determination of their rights, by the application of settled and uniform rules of law ; appealing not only to the learning but to the conscience of the court. Instead of this, the legislature have undertaken to make a law for the case ; not uniform and applicable to all citizens of the Commonwealth in all like cases ; but affecting, divesting and changing rights, without a hearing of the parties interested, based on considerations of expediency alone, and without reference to the " standing laws ;" so that the act, if valid, has all the effect of a judgment, though it violates all the principles upon which judgments are rendered.

*S. Bartlett,* for Alice C. Earle. The decree in the case of the *Grafton Bank* v. *Bickford* determined nothing as to the *status* of Stone, but simply that the judge who undertook to adjudicate that question had not jurisdiction to do so. At the end of the proceedings, his *status* as to being or not being an insolvent debtor was left wholly unaffected. Besides ; this decree was passed on the petition of a single creditor, and without actual or constructive notice to Mrs. Earle. As to her, and all parties not notified, the proceedings in that case are as if they had never been had. No bill of revivor is requisite, or could on legal principles be sustained, by Mrs. Earle. No doctrine of representation can make her privy to the decree. No new fact exists on which to found such bill. There is, therefore, no decree of this court which can bind persons in the situation of Mrs. Earle. The proceedings were so defective as not to stand in the way of legislative action, if the statute can be sustained on other grounds.

The question then arises, whether, consistently with the provisions of the Constitution, it is in the power of the legislature to pass a remedial act, by which the doings of courts of record in numerous cases, in two counties, where the parties and sub ject matter were clearly within their several jurisdictions, and the proceedings properly pending therein, shall be confirmed, notwithstanding a person assuming to act as judge in such

courts, from disqualification, or from any other cause, shall have been, and adjudged to have been, a mere judge *de facto*. It is clear that the court was in existence, and the original petition in Stone's case duly and legally pending therein, whatever may have been the defect in the ulterior proceedings. The existence of the court does not depend upon the question whether there is or is not a vacancy in the office of judge. The petition in this case was addressed " to the judge of the court of insolvency in and for the county of Worcester ; " and it was duly filed in court, which was open to the initiatory step of receiving it. The case was an existing case, and the court an existing court, and the parties and subject matter completely within its jurisdiction. The injunction, therefore, affects only the proceedings subsequent to the filing of the petition. And while there was a petition in court, yet unacted on, there was no power of proceeding with a second petition.

It is well settled by the decisions of this court, and by the opinions. of jurists, that there does exist in the legislature a power to cure defects in the proceedings of courts, if they have acted without jurisdiction, or if the judge was only a judge *de facto ;* although the rights of those who have acted under such proceedings may be incidentally affected thereby. The decree in this case settled nothing but a point of jurisdiction. *Walter* v. *Bacon*, 8 Mass. 468. *Locke* v. *Dane*, 9 Mass. 360. *Foster* v. *Essex Bank*, 16 Mass. 271. *Simmons* v. *Hanover*, 23 Pick. 194. 1 Kent Com. (6th ed.) 456. *Syracuse City Bank* v. *Davis*, 16 Barb. 188. The act in question was not an exercise of judicial power. A statute can be judicial, only when it purports to, and in its direct effect does, deal with facts or law in controversies between party and party, and thereby disposes of their rights. *Rice* v. *Parkman*, 16 Mass. 326. The decree heretofore made by this court settled no rights between party and party, except their rights to a remedy, and this it has long been established is not a vested right. None of the many titles acquired under the proceedings enjoined were or could be acted upon in that case, and none of the rights of the parties were directly affected thereby. The fact, that an act renders nugatory former adjudications

construing the statute which it confirms, does not make it an exercise of judicial power. *Patterson* v. *Philbrook*, 9 Mass. 151. *Walter* v. *Bacon*, 8 Mass. 468.

From the general proposition, that it is within the power of the legislature, by remedial acts, to cure defects in judicial proceedings, it follows as a corollary, that whoever takes a title, or alters his position, in the faith that defective proceedings will remain forever as they are, must do so subject to an equity which the legislature may take notice of, and subject to the chance that the proceedings will be cured. In *Simmons* v. *Hanover, ubi supra*, the legislative act conferred a jurisdiction which the court never had. If it is said that, by ratifying judicial proceedings which, without legislative action, would be nugatory, the legislature in effect try the case, the reply is, that this consequence pertains to all remedial acts. But there must be a power to remedy the difficulty, if an act is done by one who is not formally a judge. And the supposed injustice of trying to correct the defects in the present case is to some extent remedied by the fact, that these persons took with full and actual notice. The new assignees, and such of the parties as took under the second assignment, were put upon inquiry whether the original petition was still pending, and whether a new petition could be filed, under which valid titles could be made. The proposition, therefore, is not true, that the legislature found two sets of assignees, each claiming the property. The second assignees either took such property only as did not pass to the first assignees, or they took nothing. The latter is probably the true hypothesis; because the second proceedings were instituted on the petition of creditors, whose debt was proved under the former proceedings, which were still pending, and because the decree only rendered void all proceedings after the filing of the petition; but the petition itself remained.

As to all other parties claiming to have been injured here, by reason of conveyances or contracts made by Stone during the brief interval between the decree for perpetual injunction, and the new petition, or, treating that petition as irregular between the decree and the act of March 14th, the fact is

patent that they were speculating upon defective legal proceedings.

Finally, if it be an element in the constitutional exercise of this power by the legislature, that it shall be shown to the court to be "just and reasonable and conducive to the public welfare," a stronger case could hardly be presented. Under a mistake in the construction of a statute upon the point of jurisdiction of a judge, numerous titles in two counties of the Commonwealth have vested, numerous parties have altered their position on the faith of the correctness of the proceedings of a court, and the injuries and confusion consequent upon a want of power to remedy the judicial error would be wide-spread and deep.

BIGELOW, C. J. The petition in this case is brought under that provision of the statute by which a general superintendence and jurisdiction are given to this court, as a court of chancery, of all cases arising under the insolvent laws. It is a proceeding in the nature of an appeal from the adjudication of the judge of insolvency of the county of Worcester, in refusing to act on a petition presented to him by the petitioner in this case on the 10th day of May 1860. To understand the question presented for our consideration, it is necessary to recur to that original petition. By it, it appears that the petitioner was a creditor of one Henry D. Stone; that said Stone was declared to be an insolvent debtor on the petition of two of his creditors, by the adjudication of Horace I. Hodges, judge of the court of insolvency of the county of Hampshire; that assignees of said Stone's estate were duly chosen; that the petitioner had duly proved his debt against said Stone's estate; that said assignees had received a large sum of money above all expenses and charges, as the proceeds of said insolvent estate, from which a dividend ought to be paid; and upon these grounds the petitioner prayed that said assignees might be ordered to pay a dividend on said estate, and that such proceedings might be had as were necessary in order that the funds in their hands might be duly distributed according to law. The judge of insolvency to whom this petition was presented, refused to grant the prayer thereof, and assigned as the reason for his refusal

that he had been prohibited and enjoined by this court from proceeding further under the warrant issued by said Hodges against the estate of said Stone, which prohibition and injunction were unreversed and still remained in full force. The object of the present petition is to obtain a decree of this court directing the judge of insolvency to proceed and hear the original petition, and to act thereon in such manner that said assignees may be required to make due distribution of the funds in their hands among the creditors of said Stone, according to the provisions of the insolvent laws; and the petitioner avers, as the specific ground on which the prayer of his petition is founded, that an act has been passed by the legislature of the Commonwealth, approved March 14, 1860, confirming all the proceedings theretofore instituted before said Hodges, by reason whereof the injunction of this court should be dissolved, and the said judge should be ordered to act further in said case. It is obvious, from this history of the previous proceedings, that the scope of our present inquiry cannot be confined to the precise matter comprehended within the prayer for relief in the original petition, and the adjudication of the judge of insolvency thereon. The case involves other rights than those of the petitioner, and reaches beyond the mere question of disposing in a proper manner of the funds in the hands of said assignees. These, it is true, are the matters more immediately and directly in issue; but they involve the broader and more general question of the validity of the original adjudication, by which said Stone was declared an insolvent, and his property was sequestrated and conveyed to said assignees, and of the rights of all parties who claim titles or interests by sales, grants or conveyances derived from said assignees, or in any way arising or growing out of said insolvent proceedings. It was this view of the nature and effect of the present petition, as operating to conclude the rights of all who might claim under the decree adjudging said Stone to be an insolvent debtor, according to the principles stated in *Merriam* v. *Sewall,* 8 Gray, 327, which prompted us to give notice to all parties interested of the pendency of the present petition, so that the rights and interests of

all persons, so far as they may be affected by the adjudication in the case, might be brought distinctly before us.

In the consideration of the case, we have not deemed it necessary to pause to inquire whether there is any technical obstacle or difficulty in the way of maintaining the petition, on the ground that the proper remedy, if any exists, is by a bill of review, and not by a proceeding like the present in the nature of a petition asking for specific relief under *St.* 1838, *c.* 163, § 18. The real merits of the controversy between the parties have been very fully and ably discussed at the bar. We have found it necessary to consider with care the interesting and important questions which they involve, and, having arrived at conclusions which seem to us to be decisive of the whole case, it has seemed to us inexpedient to allow an objection of a purely formal nature to stand in the way of stating the result to which our minds have been brought on the main point in issue.

This court has already had occasion to decide that the proceedings by said Horace I. Hodges, in issuing the warrant against the estate of said Stone and in adjudging him to be an insolvent debtor, were originally illegal and invalid, and the assignees of the estate of said Stone, who were chosen and appointed at a meeting of his creditors, held in pursuance of said warrant and adjudication, have been by a decree of this court perpetually enjoined from any further action in administering or disposing of the assets in their hands as assignees, or in any way intermeddling with his estate. The reasons on which that decision was founded are stated at length in *Grafton Bank* v. *Bickford*, 13 Gray, 564. There would seem to be no room for doubt that, if the judgment rendered in that case is not invalidated or annulled, but still remains in full force, it constitutes a complete bar to the maintenance of the present petition, so far at least as the rights of parties and privies to it are involved in the present proceeding. It was in the nature of a judgment *in rem*, or like a decree in the case of a creditor's bill, by which the rights of all persons who are parties to the proceeding, or who might have become so, or who stand in the

relation of privies to the subject matter in controversy, are finally determined. It settled conclusively the question of the invalidity of the proceedings by which Stone was adjudged to be insolvent, and his estate was sequestrated and transferred to his assignees. Whatever may have been its effect on the rights of those who had no constructive notice of the pendency of that proceeding, or who were not so situated in relation to the question at issue as to be within the rule of equity by which the rights of those who are represented in a suit are held to be concluded, that judgment was certainly binding on the immediate parties to the present petition; on the petitioner, who was directly privy thereto as a creditor; and on the judge of insolvency and the assignees, who were respondents and duly served with notice. But we are strongly inclined to the opinion that this was not the whole extent to which it operated on the rights of parties. It was a judicial determination, by which it was adjudged once for all that the decree by which the property of Stone was taken and conveyed to his assignees was invalid. *Wheelock* v. *Hastings,* 4 Met. 504. The proceedings in insolvency were thereby declared void. It would seem to follow, that the rights of all persons claiming under or by virtue of said decree, or in privity with said assignees, were thereby conclusively and finally settled. Such we are disposed to believe must be the effect of that decree, if it be true that a judgment of this court on the validity of insolvent proceedings, when drawn in question on a petition in the nature of an appeal, is conclusive as to the subject matter of the appeal, that is, as to the validity of the sequestration of the debtor's estate. Such we understand to have been the decision of the court in *Merriam* v. *Sewall, ubi supra.* This result seems to flow necessarily from the nature of the proceeding. In the language of one of the learned counsel who appeared in aid of the petition, " it would be intolerable if each creditor or other party in interest could maintain a separate petition, successively to try and determine the same question." If it be alleged that the former judgment, by which the proceedings in insolvency against said Stone were held void, cannot affect the rights of persons holding estates by grants, sales **or**

other conveyances from said assignees, because they did not become parties to that proceeding and were not notified of its pendency, an appropriate and sufficient answer would seem to be, that such a defect in giving notice to parties interested might constitute an error in the proceedings, and furnish good ground for a rehearing of the case upon proper process, so far as it operated on the rights of parties to whom due notice was not given; but that it does not affect or impair the decree, so long as it remains unreversed and in full force, by which it has been determined that the property of said Stone was not legally vested in his assignees. The *res judicata* was the title to the estate of the debtor as affected by the insolvent proceedings. Although that decree may be subject to reconsideration and modification for error, either of fact or law, yet if it is still in force until changed or modified on due proceedings had, it would seem that it must have the binding force and effect of a perfect judgment *in rem.* If this be not so, we do not see why the evils indicated in *Merriam* v. *Sewall* would not follow in all cases where notice of the original proceedings was not given to all parties interested. The same question might be litigated anew in successive suits with different results.

Such being the nature and effect of the judgment which has heretofore been rendered on the subject matter in controversy in the present proceeding, the inquiry arises whether it has ceased to be a binding judgment, and is no longer conclusive on the rights of parties and privies. In considering this question, it is to be borne in mind that the object of the present proceeding is not to reverse or correct the former decree as being erroneous by reason of defect or informality. The original validity of that judgment is not called in question by the petitioner, or by any of the parties now before the court. Nor are we called on to decide whether this court has power for sufficient cause to revive or rehabilitate proceedings in insolvency, after a decree has been passed annulling or superseding them. The gist of the present inquiry is, whether the legislature, by a statute confirming proceedings which this court has adjudged to be void, and declaring that the same shall be taken to be good and valid in law, have

the power to impair, set aside or annul the force and effect of a judgment in its nature final, so that it can no longer be held to be conclusive on the rights of parties. Such is the effect which the petitioner seeks to give to *St.* 1860, *c.* 78. It is the sole ground on which the interposition of the court is asked in the present proceeding. The validity of the statute in its application to other cases or proceedings in insolvency is not now before us. The precise question is, whether it can be held to operate so as to confer a jurisdiction over parties and proceedings which it has been judicially determined did not exist, and give validity to acts and processes which have been adjudged void.

The statement of this question seems to us to suggest the obvious and decisive objection to any construction of the statute which would lead to such a conclusion. It would be a direct exercise by the legislature of a power in its nature clearly judicial, from the use of which it is expressly prohibited by the thirtieth article of the Declaration of Rights. The line which marks and separates judicial from legislative duties and functions is often indistinct and uncertain, and it is sometimes difficult to decide within which of the two classes a particular subject falls. All statutes of a declaratory nature, which are designed to interpret or give a meaning to previous enactments, or to confirm the rights of parties either under their own contracts or growing out of the proceedings of courts or public bodies, which lack legal validity, involve in a certain sense the exercise of a judicial power. They operate on subjects which might properly come within the cognizance of the courts, and form the basis of judicial consideration and judgment. But they may nevertheless be supported as being within the legitimate sphere of legislative action, on the ground that they do not declare or determine, but only confirm rights; that they give effect to the acts of parties according to their intent; that they furnish new and more efficacious remedies, or create a more beneficial interest or tenure, or, by supplying defects and curing informalities in the proceedings of courts, or of public officers acting within the scope of their authority, they give effect to

32 *

acts to which there was the express or implied assent of the parties interested. Statutes which are intended to accomplish such purposes do not necessarily invade the province or directly interfere with the action of judicial tribunals. But, if we adopt the broadest and most comprehensive view of the power of the legislature, we must place some limit beyond which the authority of the legislature cannot go, without trenching on the clear and well defined boundaries of judicial power. The wise and salutary provision in our Constitution, by which its framers sought to declare the distribution of the different powers of the government and to keep them separate and distinct, is not a mere abstract truth. It is capable of a practical application, by which each department may be made to operate within its own appropriate sphere, so as to accomplish the great end of securing a government of laws and not of men. Although it may be difficult, if not impossible, to lay down any general rule which may serve to determine, in all cases, whether the limits of constitutional restraint are overstepped by the exercise by one branch of the government of powers exclusively delegated to another, it certainly is practicable to apply to each case, as it arises, some test by which to ascertain whether this fundamental principle is violated. If, for example, the practical operation of a statute is to determine adversary suits pending between party and party, by substituting in the place of the well settled rules of law the arbitrary will of the legislature, and thereby controling the action of the tribunal before which the suits are pending, no one can doubt that it would be an unauthorized act of legislation, because it directly infringes on the peculiar and appropriate functions of the judiciary. It is the exclusive province of courts of justice to apply established principles to cases within their jurisdiction, and to enforce their decisions by rendering judgments and executing them by suitable process. The legislature have no power to interfere with this jurisdiction in such manner as to change the decision of cases pending before courts, or to impair or set aside their judgments, or take cases out of the settled course of judicial proceeding. It is on this principle that it has been held that the legislature have no power

to grant a new trial or direct a rehearing of a cause which has been once judicially settled. The right to a review, or to try anew facts which have been determined by a verdict or decree, depends on fixed and well settled principles, which it is the duty of the court to apply in the exercise of a sound judgment and discretion. These cannot be regulated or governed by legislative action. *Taylor* v. *Place*, 4 R. I. 324, 337. *Lewis* v. *Webb* 3 Maine, 326. *De Chastellux* v. *Fairchild*, 15 Penn. State R. 18. *A fortiori*, an act of the legislature cannot set aside or annul final judgments or decrees. This is the highest exercise of judicial authority. Lord Coke calls judgment and execution the "fruit of the law." To vest in the legislature the power to take them away, or to impair their effect on the rights of parties, would be to deprive the judiciary of its most essential prerogative. It could then no longer finally adjudicate and determine the rights of litigants. The will of the legislature would be substituted in the place of fixed rules and established principles, by which alone judicial tribunals can be governed. The power to correct errors and to revise and reverse judgments, which in the strictest sense of the word has always been deemed essentially judicial, would be transferred to the legislative branch of the government, even to the extent of controlling the final decrees of the tribunal of last resort. It is obvious that such an exercise of authority would lead to the entire destruction of the order and harmony of our system of government, and to a manifest infraction of one of its fundamental principles. Indeed it is difficult to see how the legislature could more palpably invade the judicial department and effectually usurp its functions, than to pass statutes which should operate to set aside or annul judgments of courts in their nature final, and which would otherwise be conclusive on the rights of parties. Upon this ground we are of opinion that the *St.* of 1860, *c.* 78, cannot be held to extend to a case like the present, in which a judicial decree declaring the proceedings void had been entered at the time of the enactment of the law. If such was the intent of the legislature in passing the act, it cannot be carried into effect, because it would operate to annul or reverse a final judgment of this

court, which had conclusively settled the rights of persons who are parties and privies to the present proceeding.

But there is another aspect of this case which seems to us to be equally decisive against any construction of the statute under consideration, by which it could be held to apply to the proceedings in insolvency against Stone, so as to give them validity *ab initio*, and render it the duty of the court to revive them by a dissolution of the injunction now in force. The first and essential step in all proceedings under the insolvent law, on which the validity of all acts and decrees in the sequestration of the estate and the administration of the assets of the debtor depends, is, that there should be an adjudication concerning the condition or *status* of the debtor. He must be found to be insolvent within the legal signification of that word, in order that his property may be taken, the title thereto vested in the assignees, and its proceeds be distributed among his creditors. Especially is this true where, as in the case at bar, the proceedings are *in invitum*, and no assent of the debtor, either express or implied, can be had or inferred to aid or confirm the course of legal proceedings by which his right to his property was devested and appropriated to the payment of his debts. The determination of the question, whether a debtor is so situated in relation to his creditors as to be subject in his person and estate to the provisions of the insolvent laws, is in its nature the exercise of a judicial power. It is not to be settled arbitrarily or capriciously, but by the application of fixed rules and established principles to facts which may be proved. Nor is it to be determined as a matter of course on the mere petition of the debtor or of his creditor, but it must be the result of due inquiry sufficient to satisfy the discretion and convince the judgment of the officer of the law, in whom the authority and jurisdiction to decide the question have been duly vested. Until such adjudication, no proper foundation is laid on which proceedings in insolvency can be maintained, nor can the property of the debtor be said to have been taken from him by due process according to the law of the land. In the case at bar, there never has been any legal and valid determination that said Stone was insolvent at the time

of the commencement of the original proceedings against him by his creditors. His condition and *status* at that point of time have never been adjudicated or passed on by any person of competent authority or jurisdiction. Such was the decision of the court when the validity of the proceedings was in controversy before us in *Grafton Bank* v. *Bickford.* It therefore follows that if he is held to be subject to the consequences which would follow from a proper and valid adjudication, to take effect from the time when the first warrant was issued against his estate, it must be by force of the act of the legislature, which confirms the proceedings and declares them to be valid. It is, then, not by an order or adjudication, made by competent authority in the due course of proceedings according to the standing law, that said Stone has been declared to be insolvent and his estate sequestrated and vested in assignees, but by an act of legislation, operating retrospectively and purporting to give efficacy and validity to acts and processes which have been adjudged void. If such a statute does not constitute an exercise of judicial power by the legislature, it is certainly a violation of another fundamental principle of the Constitution. It takes away from a subject his property, not by due process of law or the law of the land, but by an arbitrary exercise of legislative will. Under our Constitution the right of the legislature to interfere with vested rights and to deprive persons of their estate is not left to implication. Not only is the right of acquiring, possessing and protecting property declared to be among the essential and unalienable rights of all men, but also, by the twelfth article of the Declaration of Rights, the great principle is enunciated that no subject shall be deprived of his property or estate but " by the judgment of his peers, or the law of the land." The meaning of the latter phrase, adopted as it was from *Magna Charta,* is well settled and familiar. As applied to civil rights and proceedings it signifies " due process of law," or " by writ original of the common law." 2 Inst. 45, 50. Or, in other words and in a more enlarged and comprehensive sense, it imports that no person shall be deprived of his right to his property by legislation merely ; but that it shall be done only according to general laws, after due

inquiry, in a regular course of proceeding according to prescribed forms, and with due opportunity to parties for a hearing, before the matter shall be adjudged against them. It is by the law in its due and orderly administration through appropriate tribunals, and not by force of an act of legislation only, that the subject can be deprived of his property in the true sense of that clause of the Constitution which secures to him the protection of " the law of the land." 2 Kent Com. (6th ed.) 13. Sedgwick on Stat. and Const. Law, 538. *Taylor* v. *Porter*, 4 Hill, (N. Y.) 140. *Wyne-hamer* v. *The People*, 3 Kernan, 378. *Hoke* v. *Henderson*, 4 Dev. (N. C.) 15. *Sohier* v. *Massachusetts General Hospital*, 3 Cush 483, 493. In this sense, it cannot be said that Stone was declared to be an insolvent debtor under the original proceedings instituted against him. Prior to the enactment of the statute, by which it is alleged that these proceedings were confirmed and made valid, there had been no adjudication or decree by virtue of which his property had been taken from him, and the title to it passed to his assignees. It was still vested in him; he had the entire *jus disponendi;* his power over it was as perfect as if no warrant had been issued against him or his estate. Clearly this was so, after the proceedings had been adjudged to be void by a decree of this court. It was then his property by force of a valid judgment *in rem.* It is therefore the effect of the statute by which if at all, the property of Stone is taken from him or from those who claim under him; and this, too, operating retrospectively and confirming proceedings which had previously been adjudged void, which were commenced and prosecuted *in invitum,* and to which there is no assent by Stone or his grantees, either express or implied. How then can it be said that he was deprived of his estate by due process of law, or according to the law of the land? Is it not a case where an attempt is made to impair vested rights by taking property against the consent of the owner by the mere force of a legislative act?

There is a class of cases, the authority of which cannot be denied, by which it is settled that persons who take grants of property, which has previously been sold and conveyed by deeds or under legal proceedings, which lack validity by reason of

some omission or informality, hold subject to the right of the legislature to cure such errors or defects by acts of retrospective legislation. To such cases the salutary principle is applicable, that the title to the property is deemed to have been vested subject to the equity existing in the first purchaser, which the subsequent statute recognizes and enforces. But it is a mistake to suppose that this case comes within that principle. No such equity existed against Stone. After the first proceedings were adjudged void, he and those claiming under him held the property by a title which was clear and unimpeachable, and which was subject to no right or claim in others which could be made valid, or which could support an equity which legislation might ripen into a paramount title against their consent. To say that a man's property may be taken from him by force of an act of legislation, which attempts to confirm and give validity to proceedings which have previously been adjudged void for want of authority and jurisdiction, is only to affirm that he may be deprived of his estate without due process of law. There is some show of reason for the doctrine, that defects and informalities in legal proceedings may be supplied or cured by legislative enactment, so as effectually to devest titles to property even as against the original owners. But in such cases legislation finds its support and sanction either in the express or implied assent of the owner, so that the maxim *volenti non fit injuria* is applicable; or from the principle, that it only gives force and effect to the regular administration of the law through appropriate tribunals having jurisdiction of the subject matter. Both these elements are wanting in the case before us. The proceedings against Stone were *in invitum,* and there is no proof of any assent by him to the sequestration of his estate. They were not adjudged to be invalid by reason of any error or omission, but because there was an entire absence of any jurisdiction or authority to commence or conduct them at all. This, we think, is the vital distinction between this case and most of the cases cited by the counsel in support of the petition, in which the authority of the legislature to pass healing acts to confirm the equity of those holding under defective legal proceedings has been recognized.

No such equity can be set up under proceedings which were wholly without authority of law; still less can it be asserted to support titles acquired under such proceedings after they have been adjudged void by the decree of a competent tribunal operating as a judgment *in rem.*

It was suggested by the learned counsel who appeared in aid of the present petition, that the validity of the statute might be upheld and vindicated as a confirmation of the acts of a judge *de facto.* But the difficulty in the way of adopting this suggestion is, that it is founded on a misapprehension. The judge of insolvency for the county of Hampshire, so far as he undertook to act and to take jurisdiction of cases in the county of Worcester, was not, in the legal sense of the term, a judge *de facto.* He had no color or show of right to exercise the duties of the office. He did not act under any appointment or commission which conferred on him a title to perform official duties or hold jurisdiction of cases in that county. This was essential to give to him the character of a judge in fact. In the absence of any legal or *prima facie* right to fill the office, he was, within the legal signification of the word, a mere usurper or intruder, whose acts and doings were not even colorably valid. *Coolidge* v. *Brigham,* 1 Allen, 333. *Fitchburg Railroad* v. *Grand Junction Railroad and Depot Co.* Ib. 552. It is not, therefore, a case where a statute was designed to confirm the acts of an officer or magistrate who has exercised a jurisdiction to which he had an apparent valid right, by virtue of an appointment or election in which there was some defect or illegality. The act under consideration goes much further. It purports to give validity to the unauthorized acts of a person who has exercised a jurisdiction to which it has been judicially determined that he had no claim or color of title. We do not mean to say that it is not competent for the legislature to pass statutes confirming acts of magistrates or other public officers, which were originally void. On the contrary, there are many cases in which such legislation would not only be valid, but would operate with a most salutary and beneficial effect. Nor do we intend to be understood, that this statute may not render valid many of the proceedings which it

was intended to confirm. But we do say, that we cannot give it effect where, as in the present case, it operates to annul or set aside the judgment of this court, and to disturb vested rights by taking property, without due process of law, against the consent of the owner.

We do not think it necessary to examine at length the cases cited from our reports by the counsel who appeared in aid of the petition. None of them are directly in point on the questions raised in the present case. The leading ones are *Walter* v. *Bacon,* 8 Mass. 468 ; *Patterson* v. *Philbrook,* 9 Mass. 151 ; *Locke* v. *Dane,* Ib. 360 ; *Simmons* v. *Hanover,* 23 Pick. 188. Of the first three, it may be said that they are not very satisfactory, and certainly cannot be considered as an authority beyond the precise cases which they decide. When necessary, it may be proper to reconsider them with care. But they do not decide that the legislature can confirm proceedings which have been adjudged void by the tribunal of last resort. No such question could arise in those cases, because the act which was there under consideration contained a proviso that it should not affect any suit in which final judgment had been rendered by this court. *St.* 1808, *c.* 92. In regard to the last named case, it is sufficient to say that the statute, the validity of which was there affirmed, in no way affected any vested right to property, and might well be sustained as affecting only a remedy and not a right.

*Petition dismissed.** 

---

* A similar decision was made at the same time, in a case arising in the same county.

### JOHN A. FAYERWEATHER *vs.* WILLIAM DICKINSON & others.

On the 28th of December 1857, Brainard A. Tyler, a creditor of the Westboro Manufacturing Company, a corporation duly established by law, filed a petition in the court of insolvency for the county of Worcester, praying, for reasons therein set forth, that a warrant might issue against the estate of the company, as an insolvent corporation ; and A. H. Bullock, the judge of that court, issued an order of notice returnable on the 2d of February 1858. Before that day, Judge Bullock resigned his office, and the hearing was adjourned by the register to February 9th, when, the vacancy still continuing, Judge Hodges of Hampshire county heard the petition and issued a warrant thereon, and William Dick-

inson and Harrison Bliss were chosen assignees at the first meeting, on February 23d. Afterwards, on the 7th of February 1860, John A. Fayerweather, a creditor of the company, filed a petition in this court praying that the proceedings before Judge Hodges might be vacated, and that the judge of insolvency for the county of Worcester might be ordered to hear and proceed with the original petition of Tyler, and that the assignees might be enjoined from acting further in the case; on which, after notice and a hearing, *Hoar,* J. issued an order in accordance with the prayer of the petition, on the 13th of February 1860; and, on the 10th of March following, the assignees and the judge of insolvency appealed to the full court, in which the injunction against the assignees was made perpetual, and a decree entered vacating all proceedings after the return of the order of notice, and ordering the case to be heard before the judge of insolvency on the original petition.

*L. H. Boutell,* for the petitioner.

*P. C. Bacon & E. B. Stoddard,* for the respondents.