The petition further alleges that on December 30, 1902, Gideon C. Wilson, County Solicitor of Hamilton County, brought suit against all of the defendants named in this action, in case number 51996, Superior Court of Cincinnati, praying-that the said contract hereinbefore set forth be held invalid; that all of the defendants be enjoined from completing said contract or from paying out any money to Chambers; or, if that could not be done, that the court should define the scope and intent of said contract, and enjoin the payment of all moneys beyond those properly due under Section 1104, Revised Statutes'.
The petition further avers that said case was prosecuted to a final judgment in the Superior Court of Cincinnati in special term, on September 25, 1903, and was then carried on error to the general term of said court, in which final judgment was rendered on December 11, 1903, affirming the judgment of the lower court in holding said contract valid, and in restricting its scope to the collection of taxes forfeited prior to June 20, 1899, and further enjoining the drawing and paying of any voucher of warrant in favor of said Chambers for any compensation for the collection of taxes accruing subsequent to June-20, 1899. This case was carried to the Supreme Court of Ohio, and in case number 8737 of the Supreme Court, on February 16, 1904, the judgment of the Superior Court of Cincinnati in general term was affirmed.
The petition then proceeds to state that of all the forfeited taxes thus collected, and those remaining uncollected, a large part accrued after June 20, 1899, as to which under the ruling of the courts said Chambers is not entitled to charge any commissions whatever.
*223 The petition then sets out an act of the General Assembly of' the State of Ohio, passed April, 1904, entitled “An Act for the relief of County Treasurers and County Commissioners.” This, act is of sufficient importance to give it in full.
“AN ACT
“For the relief of County Treasurers and County Commissioners,
“Whereas, certain counties in Ohio are and have been receiving delinquent and forfeited taxes, collected under contracts, entered into between the county treasurer and county commissioners of said counties, and certain suitable persons under supposed authority invested in them by Section 1104, Revised Statutes of Ohio, as amended April 4, 1902; and
“Whereas, the terms of such contracts were made to cover all delinquent and forfeited taxes found charged against lands appearing on delinquent and forfeited duplicates of the date of such contracts; and
“Whereas, it was the opinion of the attorney-general of the state, and the decision of the common pleas and circuit courts that said Section 1104, Revised Statutes of Ohio, as amended April 4th, 1902, authorized such contracts; and
“Whereas, the parties so contracted with did at great expense and labor perform the service contemplated under said contracts, and collected taxes regarded as desperate claims, by which services the state, the counties and the municipalities interested are materially benefited; and
“Whereas, commissions on the entire amount of delinquent and forfeited taxes so collected and turned into the several county treasuries according to the terms of the several contracts have been paid or set apart to be paid; and
“Whereas, the Supreme Court of the State of Ohio has recently decided that said Section 1104, Revised Statutes of Ohio, as amended April 4, 1902,,only authorized a contract for taxes delinquent and forfeited prior to 1899; now therefore
“Be it enacted by the General Assembly of the State of Ohio:
‘ ‘ Section 1. The board of county commissioners of any county is hereby authorized and empowered to pay out of the delinquent and forfeited taxes so collected and turned into the county treasury under such contracts, commissions on the full amount. *224 of such, taxes according to the percentage terms of such contracts, and such allowances shall be apportioned ratably by the county auditor among all the funds entitled to share in the distribution of such taxes, and all allowances heretofore made by the board of county commissioners or county -treasurer under such contract for collecting delinquent and forfeited taxes, under Section 1104, Revised Statutes of Ohio, as amended April 4, 1902, are hereby authorized and approved; provided, however, that such allowances made did not exceed the percentage amount allowed by Section 1104, as amended April 4, 1902.”
The petition then alleges that this act is invalid for three reasons, which are given in full, and which will be considered in their order; that the defendants will pay Chambers for collecting the forfeited taxes subsequent to June 20, 1899, unless restrained by this court; and finally plaintiffs pray for an injunction restraining them from doing so and for all other equitable relief.
For amendment to their petition the plaintffs say that case number 51996 in the superior court, above referred to, was instituted within six weeks after the making of the contract; that a temporary injunction was issued on the date of filing said case, enjoining said Chambers from collecting any taxes whatever, and from receiving any compensation for collecting the same; that on the 5th day of January, 1903, upon application made by the defendants, the restraining order theretofore issued was modified, permitting the collection of all taxes under said contract, but enjoining Chambers from receiving compensation for collecting the same; that on June 10,1903, it was specifically alleged in an amended petition then filed in cause number 51996, that a contract could be made to empower Mr. Chambers to collect only those taxes prior to 1899; and that William F. Chambers therefore had notice that he had no right to collect or receive compensation for collecting forfeited taxes subsequent to June 20, 1899.
The first objection to the validity of the act of April, 1904, is, that it is in violation of Section 16 of the Bill of Rights, Article II, Section 32, and Article IV, Section 1 of the Constitution of Ohio; and that its effect is to nullify, set aside and *225 render inoperative a.judgment of the courts of this state rendered in a case involving the construction of a contract still in process of execution between the parties thereto, and further, that it is an inteference by the legislative department of the government of the exercise by the judicial department of the powers conferred upon it by the Constitution.
It must be conceded that, as a general principle, the Legislature has no right to pass an act to invalidate the judgment of a court, or to declare a claim to be legal which a court has decided is illegal. The great weight of authority supports this contention made by the plaintiffs.
To ascertain if this first objection is well taken, therefore, it will be necessary to consider just what was decided by the courts ■ in the action begun in the Superior Court of Cincinnati, and affirmed by the Supreme Court, the history of which is given in the petition.
An examination of the decision of the Supreme Court, as it is set forth in the petition, discloses that the court did not find that Chambers’ claim for compensation for collectng forfeited taxes subsequent to 1899 was illegal, but that he was not entitled to compensation by virtue of the contract which he had ■with the county. To use the words of the plaintiff’s own brief, the decision was to the effect that the contract ‘ ‘ created no valid claim against the county.”
The courts distinguish between claims which are illegal and claims which are, to use the term applied in some cases, nonlegal. The first ought not to be paid at all; the second ought to be paid, but it 'takes an act of the Legislature to make their collection possible. So far as the decision of the Supreme Court is concerned, Chambers’ claim may have been merely non-legal.
In all of the cases cited by the learned counsel for the plaintiffs, the claim which the Legislature attempted to validate had been decided by a court to be “illegal,” “invalid” or “void.”
A review of these cases is here given, putting the exact words used by the courts in quotation marks. It has been held that a Legislature can not validate assessments decided by a court to be “illegal and invalid” (79 Ind., 275); a tax levy that has *226 been held “illegal and void” (65 Ind., 427); an “invalid” claim (84 Mass., 361); a “void” claim (19 Ill., 226); an “illegal” tax roll (29 Mich., 59); a “void” bond (15 R. I., 451); an “illegal” assessment (26 Maryland, 194); and that the Legislature can not make valid retrospectively what it could not originally have authorized — i. e., “illegal” taxes (26 Mich., 22).
In the two or three other cases cited by plaintiffs’ counsel it was held that the Legislature can not invalidate a claim held by a court to be valid, and in one case that the Legislature can not “control” a case pending in the Supreme Court of the state; but these cases are not of the same kind as the case in hand.
Coming to the cases cited by the learned counsel for the defendants, it must be admitted that some of them are rather contrary to those cited by counsel for the plaintiffs. For instance, in the 119 N. Y., 204, it was held that the Legislature may validate a claim “supported by a moral obligation and founded in justice,” which has been declared invalid by a court. Some of the other cases cited by defendant’s counsel are to the same effect.
Conceding, however, the soundness of the proposition advanced by plaintiffs’ counsel, this court is of opinion that the act authorizing the payment of Chambers’ claim does not invalidate the judgment, and that it is therefore not unconstitutional because of the first reason advanced by plaintiffs ’ counsel.
In the second place, it is claimed that this statute violates Section 28, Article II of the Constitution against retroactive laws, which is as follows:
“The General Assembly shall have no power to pass retroactive laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties and officers by curing omissions, defects and errors in instruments and proceedings arising out of their want of conformity with the laws of this state.”
The definition of a retroactive law given by Mr. Justice Story *227 is approved in Rauden et al v. Holden, etc., 15 O. S., 207-210, and is as follows:
“Upon principle, every statute which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed, must be deemed retrospective.”
It can not be denied that this act creates a new obligation in respect to a transaction already past, and is therefore retroactive. Relying upon the fact that this act is plainly retroactive, the learned counsel for plaintiffs cites no authorities in support of this second objection of theirs to the constitutionality of the act, but content themselves with a criticism of the authorities cited for defendants. These authorities and the propositions they are cited to support will be examined.
In the first place, the defendants say that the county is only a local subdivision of the state, and as such is subject to the same rules with reference to financial responsibilities as the state itself, and this claim is supported by Commissioners v. Mighels, 7 O. S., 109-118.
In the next place, defendants contend that “the constitutional inhibition \i. e., against retroactive laws) does not apply to legislation recognizing or permitting the binding obligation of a state or any of its subordinate agencies with respe'ct to past transactions. It is designed to prevent retroactive legislation injuriously' affecting individuals and thus protect vested rights from invasion. ’ ’ These are the exact words of Mr. Justice Field in New Orleans v. Clark, 95 U. S., 644-655, and they are quoted and affirmed in Kumler v. Silsble, 38 O. S., 445-447; State, ex rel, v. Capeller, 39 O. S., 207-215; and Burgett v. Norris, 25 O. S., 308. The principle is approved also in State, ex rel, v. Peters, 43 O. S., 629-652.
The result of the two foregoing propositions is, that under some circumstances a retroactive law may properly be passed creating a debt against the county “in respect to a transaction already past.”
*228 The next inquiry is, under what circumstances may such a law be passed? Defendants’ counsel says (to state his proposition briefly) that such a law may be passed when the public body is morally bound to pay the debt. In support of the latter contention counsel cites 95 U. S., 644, supra; 39 O. S., 207; 41 O. S., 423; 51 O. S., 531; 13 O. D., 90; 8 C. C., 103; 18 C. C., 216; 1 Dillon on Municipal Corporations, Section 75; Cooley on Constitutional Limitations, 7th Ed., page 528, et seq.; Tiedeman on Municipal Corporations, Section 16; 6 American & English Encyclopedia, 2d Ed., page 941; 111 N. Y., 447; 19 N. Y., 116; 35 N. Y., 551; 3 Wal., 327; 7 Wal., 619; 63 N. Y., 239; 102 N. Y., 48; 112 N. Y., 146; 20 O. S., 362; 36 O. S., 227; 25 O. S., 308.
The case cited by counsel for the plaintiffs, Commissioners, etc., v. Rosche, 50 O. S., 103, decided by Bradbury, J., recognizes the principle laid down by the same learned judge in 51 O. S., 531, stipra, and the others of the long list of authorities just given; and merely holds that the claim under his consideration was not founded in justice.
There can be no doubt from the authorities that this proposition of defendants’ counsel is sound.
The only remaining question is, is Chambers’ claim one that the county in good conscience is bound to pay?
In answering this question, two things ought to be considered. First, ought Chambers to have known from the terms of his contract that he was not called upon to collect any forfeited taxes subsequent to 1899; and second, was the work of collecting the forfeited taxes for 1900 and 1901 such as the county officers could and would have performed in the course of their duties
Taking up the first inquiry, how can it be said that Chambers ought to have known just what the scope was of his contract with the county The contract was completed and ratified by the necessary officers November 15, 1902, and Chambers at once began work under it, taking steps to collect all forfeited taxes down to and including 1901. Six weeks later, December 30, 1902, suit was filed by the then county solicitor in the su *229 perior court to test the validity of the contract. The petition in this case claimed that Chambers had no right to collect any taxes at all under the contract. A temporary restraining order was issued by the court enjoining Chambers from collecting any forfeited taxes whatever under the contract. It can not be said that Chambers should have been put on his guard as to what his rights were under the contract, either by the filing of this petition or by the granting of the temporary restraining order; for both were wrong in a large degree. In January, 1903, the county officers applied for, and the court granted, a modification of this temporary injunction so as to allow Chambers to collect all the forfeited taxes, but holding the question of his compensation until the final decision., This proceeding was rather calculated to lead him to believe that he had a right to collect the taxes.
On June 10, 1903, an amended petition was filed abandoning the claim that Chambers had no right to collect any taxes, but claiming that the contract was illegal only in so far as it related to forfeited taxes for 1900 and 1901.
There was no decision on the merits of the ease by the court until the final judgment was rendered in special term, September 25, 1903. Until that judgment Chambers had no way of knowing whether his contract was valid or not; and in the meantime he was not only collecting the forfeited taxes which the Supreme ■ Court finally decided he had a right tó collect, those previous to June 20, 1899, but at the same time he was collecting those for 1900 and 1901, because, as the petition alleges, he “claimed the right” to do so under his contract. In other words, he was collecting these forfeited taxes for 1900 and 1901 in good faith because he thought it was his duty to do so under the contract; and for the most part his judgment about the contract turned out to be correct.
Now the second question is, upon this branch of the case, could and would the county officers have collected these delinquent taxes in the course of their duty?
The court takes judicial cognizance of the fact that in most instances it is a very difficult and intricate matter to find the *230 necessary information as to owners of property which has fallen into arrears for taxes, so that the sheriff can effect a sale of the property in such a way that a purchaser would be disposed to pay fair value for it. The court will further take judicial cognizance of the fact, as an historical fact, that the county officers of all the counties in this state have always left a substantial part of the forfeited taxes uncollected for the reason that they have neither the time nor the means to collect the necessary information to enforce sales. The Legislature of the state evidently took this fact into consideration when the law was passed authorizing contracts of this sort in all the counties of the state; and some importance should be attached to the motive which led the Legislature to enact the law.
From these facts it is fair to conclude that the collection of the forfeited taxes under a contract like that with Chambers is an advisable and profitable arrangement for the county; although it is true that the reason for employing a special agent to collect taxes forfeited in recent years is not so good as for engaging his assistance for the years further back.
Realizing that the county officers would doubtless have collected a part of the forfeited taxes for 1900 and 1901 had Chambers not done so, the court must consider that the collection of the taxes for these two years was still a great benefit to the county; and in view of all the circumstances under which Chambers was led to collect the taxes for these years at the same time he was collecting those which he had a right to collect under his contract, it is not fitting for a chancellor to say there is no moral obligation upon the county to pay the debt.
There is even the very best authority for saying that—
“It is not the province of the courts to review the determination of the Legislature that in equity and morals it is the duty of a county to recognize and pay a claim against it which is not legally enforceable, unless the facts assumed by the Legislature and on which it acted are disputed.” New York Life Insurance Company v. Board of Commissioners of Cuyahoga County, Ohio, 106 Fed. Rep., 123.
Ampt, Ireton, Collins & Schoenle, for plaintiffs.
Frank F. Dinsmore, for defendants.
This ease was decided by Justice Harlan, sitting with Judges Severens and Thompson.
The demurrer is therefore sustained and an entry may be drawn accordingly.