## NEW ORLEANS *v.* CLARK.

1 Where an ordinance of a city, authorizing a contract with a gas company, and the issue to it of bonds of the city, provided that the company should " guarantee the said bonds and assume the payment of the principal thereof at maturity," — *Held*, 1. That the guaranty embraced both the principal and interest of the bonds. 2. That the ordinance contemplated two undertakings by the company, — one, to the bondholder, to answer for the city's liability; and the other, to the city, to provide for the payment of the principal of the bonds on their maturity.

2. The indorsement on the bonds by the president of the company, guaranteeing " the payment of the principal and interest " of them, was a compliance with the ordinance and contract as to the guaranty.

3. It is competent for the legislature to impose upon a city the payment of claims just in themselves, for which an equivalent has been received, but which, from some irregularity or omission in the proceedings creating them, cannot be enforced at law.

4. A law requiring a municipal corporation to pay such a claim is not within the provision of the Constitution of Louisiana inhibiting the passage of a retroactive law.

ERROR to the Circuit Court of the United States for the District of Louisiana.

This was an action commenced Feb. 7, 1874, by Freeman Clark against the Jefferson City Gas-light Company and the city of Carrollton, La., to recover $7,200, the amount of overdue interest coupons cut from certain bonds issued by said city to that company.

On the 11th of January, 1871, the mayor and council of the city of Carrollton passed an ordinance authorizing the mayor to enter into a contract with that company to light the city and supply the citizens with gas-light, and providing that, in consideration of the execution of the contract by the company within a specified time, " the city of Carrollton, through the mayor, shall provide and issue forty-five $1,000 bonds of the city of Carrollton, payable in thirty years, with interest at eight per cent, payable semiannually to the order of the said Gas-light Company: *Provided*, the said company shall guarantee the said bonds, and assume the payment of the principal thereof at maturity; *And provided further*, that if at the maturity the said company shall fail to pay said bonds, then the said city shall pay the same, and become the owner of all

the gas-works, main-pipes, posts, &c., then lying and being within the present limits of the city of Carrollton.

"That the treasurer of the city of Carrollton shall specially appropriate and set aside in lawful money, every month, such amount or proportion of the taxes and dues of said city as shall be necessary to meet the interest on said bonds and such gas-bills as may accrue against said city; and that the mayor in said act shall be authorized to make such other agreements, not inconsistent herewith, as may be necessary to carry out the purposes of the ordinance, and make the said contract legal and conclusive on both parties thereto."

A contract embracing the terms and stipulations of the ordinance was entered into between the mayor and the company; and the latter, having complied therewith, received the bonds, with coupons for interest attached.

The bonds and coupons were in the following form: —

"No. 1.]          CITY OF CARROLLTON.          [$1,000.

"A.]          *State of Louisiana.*          [No. 1.

"Know all men by these presents, that the city of Carrollton will pay to the Jefferson City Gas-light Company, or order, the sum of $1,000, in current money of the United States, in thirty years from the date thereof, with interest at the rate of eight per cent per annum, payable semiannually on the first day of January and first day of July of each year, at the office of the city treasurer, on the delivery of interest coupon attached to said bond. For the payment of the principal and accruing interest on this bond the faith and credit of the city of Carrollton is pledged, as set forth in the ordinance printed on the reverse hereof, passed and approved Jan. 11, 1871.

"In testimony whereof, the seal of the city of Carrollton is hereto affixed, and the signatures of the mayor, controller, and treasurer appended in writing on the first day of July, 1871.

                                        " T. A. MARTIN, *Controller.*
[SEAL.]                                  " FREDERICK KERN, *Treasurer.*
                                        " D. M. BISBEE, *Mayor.*

(Written across the face :) " The Jefferson City Gas-light Company guarantee the payment of the principal and interest on this bond to the holder thereof.

                                        " JOHN LOCKWOOD, *President.*"

" $40.]                                        Coupon.

" The city of Carrollton will pay to bearer forty dollars at the office of the city treasurer, being six months' interest due July 1, 1874, on bond No. 1, for one thousand dollars. .

"A.                                        Frederick Kern, *Treasurer.*"

An act of the legislature of Louisiana, passed Feb. 12, 1872, empowered the mayor and city council of the city of Carrollton to ordain, establish, and cause to be carried into effect and execution, all such by-laws, ordinances, resolutions, rules, and regulations as they might deem expedient for the good government of said corporation which are not contrary to the Constitution and laws of the State or the United States. They were also authorized and empowered to fund the outstanding debts and obligations of the city created for wharves, streets, gas, and other improvements of said city, by issuing its bonds in such sums as they might deem advisable, running for thirty years, with interest at eight per cent payable semiannually: *Provided,* that any ordinance for the issue of bonds should provide for the payment of their principal and interest by levying such annual tax as would raise a sufficient sum to pay the interest of said bonds as the same might come due, and should create a sufficient sinking fund to meet the principal at maturity.

April 10, 1872, the following ordinance was adopted by the mayor and council of the city of Carrollton : —

" An ordinance to provide for the payment of the bonds and interest on the same, as authorized by the provisions of the new charter of the city of Carrollton, bearing date the twelfth day of February, 1872, providing for the funding of the outstanding debts and obligations of the said city created for the wharves, streets, gas, and other improvements of said city.

" Section 1. Be it ordained by the mayor and council of the city of Carrollton, that there shall be assessed and levied a tax on all real and personal property within the limits of said city, as per amended charter, bearing date the twelfth day of February, 1872, and to be collected annually, one-half of one per cent ($\frac{1}{2}$ per cent), for the purpose of paying the principal and interest of two hundred bonds of $1,000 each, or as much thereof as may be required to

fund the city debt, and to be issued under this ordinance, and running for thirty years, the proceeds of the same to be applied for the purpose of funding the city indebtedness.

" Sect. 2.   Be it further enacted, that the aforesaid tax of one-half of one per cent shall be assessed and levied on the assessment rolls of 1872, and shall not be exigible or collectible before the year 1873, and shall then be collected in the same manner as other taxes, and in accordance with the city charter in relation thereto.

" Sect. 3.  Be it further enacted, &c., that the treasurer of the city of Carrollton shall annually set aside, after paying the interest as provided semiannually on said bonds, a sufficient amount to pay the principal at maturity : And provided further, that any failure or neglect upon the part of the treasurer of said city to comply with the provisions of said ordinance shall be a sufficient cause for his removal from office.

" Sect. 4.  Be it further enacted, that the mayor of the said city, and chairman of the finance and the chairman of the streets and landings committees, be, and are hereby, authorized and empowered to forthwith negotiate a loan, sufficient in amount and as heretofore provided for in this ordinance, to liquidate the indebtedness of said city ; and that the mayor is hereby authorized and empowered to have engraved and printed two hundred bonds of $1,000 each, with coupons attached, and to warrant on the treasurer for the payment of the printing and engraving of the said bonds, and to issue the necessary amount of bonds payable in thirty years required to meet said loan thus negotiated.

" Sect. 5.  That this ordinance take effect from and after its passage."

An act of the legislature, approved March 23, 1874, enacts as follows : —

" Section 1.  That all that portion of the parish of Jefferson being and lying below the centre of Upper Line Street of the city of Carrollton, commencing at Mississippi River, and extending northwardly along the centre of said street to its terminus, and thence along the centre of the line of the New Orleans and Carrollton Railroad to Lake Pontchartrain, shall be and constitute the upper boundary line of the parish of Orleans and the city of New Orleans; and all that portion of the city of Carrollton thus detached from the parish of Jefferson and added to the city of New Orleans and parish of Orleans shall be governed by the mayor and administrators of the city

of New ·Orleans; in. accordance with existing laws, except so far as not inconsistent with this act."

"Sect. 5. That all the rights, titles, and interest of the city of Carrollton, as now existing, in and to all lands, tenements, hereditaments, bridges, ferries, streets, roads, wharves, markets, stalls, levees, landing-places, buildings, and other property of whatsoever description and wherever situated, and of and with all goods, chattels, money, effects, dues, demands, bonds, obligations, judgments and judgment liens, actions and rights of action, books, accounts, and vouchers, be, and they are hereby, vested in the city of New Orleans: *Provided*, that all estates, income funds, or property of every description now held in trust by said city of Carrollton, or which shall have been specially pledged or affected by the payment of any debt, shall be held by the city of New Orleans, under this act, upon and for the same use, trust, limits, limitation, charities, and conditions as the same are now held; and the debt and all other indebtedness or liabilities of the city of Carrollton, including the funding and improvement bonds, and the bonds issued to the Jefferson City Gas-light Company, and known as the gas bonds, and notes, interest coupons, wages, salary due or to become due, warrants, or other species of obligations whatsoever, shall be assumed and paid by the city of New Orleans; and said city is hereby declared liable therefor: *Provided further*, that all officers of said city of Carrollton shall continue as at present constituted to discharge the duties of their respective offices until this act of incorporation can be completed by putting into possession of the proper officers of the city of New Orleans the books, papers, records, documents, and other property now belonging to the city of Carrollton, and no longer, and after which time all the powers, rights, privileges, and immunities possessed and enjoyed by the mayor and council of the city of Carrollton shall cease and terminate: *And provided further*, that the claims or vested rights of any person or persons, or company or corporation, of said city of Carrollton, that have been granted, acquired, or received from or against said corporation of the city of Carrollton, or otherwise, shall not be interfered with, divested, or impaired by this act, nor by the city of New Orleans, without adequate compensation."

"Sect. 8. That the act entitled 'An Act to incorporate the city of Carrollton,' approved March 17, 1859, and all acts amendatory thereof, be, and the same are hereby, repealed."

"Sect. 12. That all laws and parts of laws in conflict herewith be, and the same are hereby, repealed; and this act shall take effect from and after its passage."

Sect. 4 of an act of the General Assembly of Louisiana passed in 1855, No. 263, provides :—

"That the constituted authorities of incorporated towns and cities in this State shall not hereafter have power to contract any debt or pecuniary liability, without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debt or contract."

The city of Carrollton pleaded the general issue, and, in addition, declared that it was in no wise bound for said bonds ; because, 1, they were issued by the officers of the city in violation of its charter; 2, that the ordinance and the contract made under it were illegal, null, and void ; and, if the city had been expressly authorized to issue the bonds, the council, by the ordinance contracting said debt, made no provision to pay the principal or interest.

The gas company, in its answer, insisted that the bonds issued under the contract for supplying the city with gas were valid ; that the city had accepted the works of the company, and enjoyed the benefit of the same ever since, and was therefore bound to pay the coupons as they became due. The answer prayed that the city of Carrollton be called in warranty, and be condemned to pay to the company any sum of money which the company might be decreed to pay to the plaintiff. March 26, 1875, after said answer had been made, Clark filed a supplemental petition, averring that since the commencement of his suit the legislature had passed an act, approved March 23, 1874, repealing the act incorporating Carrollton and annexing it to the city of New Orleans ; and, further, that by the fifth section of that act the latter city was made liable for said bonds *in solido* with the said gas company.

To this supplemental petition the company filed an answer, denying all the allegations of the petition tending in any way to show responsibility on its part, and alleging that the city of New Orleans was bound to hold the respondent harmless from any claim of the plaintiff, and praying that said city be called in warranty, and condemned to hold the respondent harmless, &c.

The city of New Orleans also filed an answer, insisting upon

the exception filed by the city of Carrollton, and that it should first be disposed of. After a general denial of the allegations of the supplemental petition, the answer averred that the city of Carrollton was without power to issue the bonds; that there was neither a moral nor a legal obligation on New Orleans to pay the same; and that any act of the legislature imposing such obligation was null and void.

There was a judgment in favor of Clark for $7,200 against the gas company, and one in favor of the company, on the call in warranty, against the city of New Orleans for a like sum.

The company and the city each sued out a writ of error, and brought the case here.

Submitted on printed arguments for the Jefferson City Gaslight Company by *Mr. Thomas J. Semmes* and *Mr. Robert Mott;* for Clark, by *Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson;* and for the city of New Orleans, by *Mr. Philip Phillips.*

Mr. Justice Field delivered the opinion of the court.

This was an action upon several coupons for interest annexed to bonds issued by the late city of Carrollton, in Louisiana, to the Jefferson City Gas-light Company, a corporation created under the laws of that State, for laying gas-pipes through certain streets of the city, and introducing gas for the use of its citizens. The bonds were indorsed by the president of the company, with its guaranty, for the payment of their principal and interest. His authority to make this guaranty, so far as it relates to the interest, was denied by the company; but the Circuit Court held that the admissions and evidence in the case showed a *prima facie* case of liability.

The bonds were issued pursuant to an ordinance of the city, which provided for the payment of the interest thereon, but made no provision for the payment of the principal; and for this omission, and because they were issued in aid of a private corporation, their validity was questioned by the city of New Orleans, upon which the liabilities of Carrollton were cast upon its annexation to that city; and as it was contended in answer to this position that the legislature had subsequently,

in the act of annexation, legalized the issue, the power of the legislature to do this was denied, but the Circuit Court held that the legislature possessed the power; and the city of New Orleans was adjudged bound to pay the bonds.

The record shows that the bonds were issued after the work had been done for which the contract was made and the gas had been introduced into the city, and that they were transferred to the plaintiff for a valuable consideration.

Two questions are presented for our determination: —

1st, Whether the Jefferson City Gas-light Company is liable on the guaranty made by its president for the interest on the bonds; and,

2d, Whether it was competent for the legislature of Louisiana to legalize the issue of the bonds, if for any cause they were originally invalid, or, more properly, to compel their payment by the city of New Orleans.

1. The ordinance which authorized the contract with the company, and the issue of the bonds of the city, in terms provided that the company should " guarantee the said bonds and assume the payment of the principal thereof at maturity." Their delivery to the company was made dependent upon this condition; but as the provision mentioned that the company was to assume payment of the principal, after specifying that it was to guarantee the bonds, it is argued that the guaranty of the principal only was intended. This is not, however, a just inference from the language. The guaranty of the bonds embraced both the principal and the interest. The payment of bonds, without other designation, always implies a payment of the principal sum and its incident; and a guaranty in similar terms covers both. The ordinance contemplated two undertakings by the company, — one to the bondholder, and one to the city. The guaranty was to be for the security of the bondholder; it was to be an undertaking to answer for the city's liability, and to be collateral to it. The other undertaking was to be for the security of the city, by placing the company under obligation to provide for the payment of the principal of the bonds at their maturity, an obligation which otherwise would not have existed.

The contract embraced the stipulations contained in the ordi-

nance, and the indorsement of the guaranty of the company by its president on the bonds was a substantial compliance with both. The language used, guaranteeing " the payment of the principal and interest," only declared in terms what would have been implied from a simple guaranty of the bonds. It is not denied that the president was the proper officer to execute whatever guaranty was authorized.

2. The invalidity of the bonds was asserted, as already stated, on two grounds: first, that they were issued in aid of a private corporation; and, second, that the city of Carrollton, in issuing them, created a debt, without providing in the same ordinance the means of paying its principal. The first of these grounds is not one which affects the validity of the bonds. A private corporation, as well as individuals, may be employed by a city in the construction of works needed for the health, comfort, and convenience of its citizens; and, though such works may be used by the corporation for its own gain, yet, as they advance the public good, the corporation may be properly aided in their construction by the city; and for that purpose its obligations may be issued, unless some constitutional or legislative provision stands in the way. The bonds here were not given to the company as a gratuity, but for a valuable consideration; and if the company failed to pay them at maturity, and their payment was made by the city, the gas-works were to become the property of the city.

The second of these grounds is not without force. An act of the legislature of Louisiana, passed in March, 1855, had declared that the constituted authorities of incorporated towns and cities in the State should not thereafter " have power to contract any debt or pecuniary liability, without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debt or contract." This enactment imposed a restriction upon the creation of liabilities by municipal bodies, which could not be disregarded. It was intended to keep their expenditures within their means; and its efficacy in that respect would be entirely dissipated, if debts contracted in violation of it were held legally binding upon the municipalities.

Assuming, then, that the bonds were invalid for the omission

stated, they still represented an equitable claim against the city. They were issued for work done in its interest, of a nature which the city required for the convenience of its citizens, and which its charter authorized. It was, therefore, competent for the legislature to interfere and impose the payment of the claim upon the city. The books are full of cases where claims, just in themselves, but which, from some irregularity or omission in the proceedings by which they were created, could not be enforced in the courts of law, have been thus recognized and their payment secured. The power of the legislature to require the payment of a claim for which an equivalent has been received, and from the payment of which the city can only escape on technical grounds, would seem to be clear. Instances will readily occur to every one, where great wrong and injustice would be done if provision could not be made for claims of this character. For example, services of the highest importance and benefit to a city may be rendered in defending it, perhaps, against illegal and extortionate demands; or moneys may be advanced in unexpected emergencies to meet, possibly, the interest on its securities when its means have been suddenly cut off, without the previous legislative or municipal sanction required to give the parties rendering the services or advancing the moneys a legal claim against the city. There would be a great defect in the power of the legislature if it could not in such cases require payment for the services, or a reimbursement of the moneys, and the raising of the necessary means by taxation for that purpose. A very different question would be presented, if the attempt were made to apply the means raised to the payment of claims for which no consideration had been received by the city.

The act of 1874, which annexed Carrollton to New Orleans, provided that all property, rights, and interests of every kind of the former city should be vested in the latter, and that the debts and liabilities of Carrollton, "including the funding and improvement bonds, and the bonds issued to the Jefferson City Gas-light Company, and known as gas bonds," should be assumed and paid by the city of New Orleans; and that city was in terms declared liable therefor. Independently of this legislation, the liabilities of Carrollton would have devolved

with its property upon New Orleans on the annexation to that city, so far, at least, that they could be enforced against the inhabitants and property brought by the annexation within its jurisdiction. *Broughton* v. *Pensacola*, 93 U. S. 266. Equitable claims which had existed against the dissolved city would continue as before, and be equally subject to legislative recognition and enforcement, or their payment might be required, as in this case, by the act of annexation. The power of taxation which the legislature of a State possesses may be exercised to any extent upon property within its jurisdiction, except as specially restrained by its own or the Federal Constitution; and its power of appropriation of the moneys raised is equally unlimited. It may appropriate them for any purpose which it may regard as calculated to promote the public good. Of the expediency of the taxation or the wisdom of the appropriation it is the sole judge. The power which it may thus exercise over the revenues of the State it may exercise over the revenues of a city, for any purpose connected with its present or past condition, except as such revenues may, by the law creating them, be devoted to special uses; and, in imposing a tax, it may prescribe the municipal purpose to which the moneys raised shall be applied. A city is only a political subdivision of the State, made for the convenient administration of the government. It is an instrumentality, with powers more or less enlarged, according to the requirements of the public, and which may be increased or repealed at the will of the legislature. In directing, therefore, a particular tax by such corporation, and the appropriation of the proceeds to some special municipal purpose, the legislature only exercises a power through its subordinate agent which it could exercise directly; and it does this only in another way when it directs such corporation to assume and pay a particular claim not legally binding for want of some formality in its creation, but for which the corporation has received an equivalent. *The People ex rel. Blanding* v. *Burr*, 13 Cal. 343; *Town of Guilford* v. *Supervisors of Chenango County*, 18 Barb. (N. Y.) 615; s. c. 13 N. Y. 143.

The Constitution of Louisiana of 1868, which provides that no retroactive law shall be passed, does not forbid such legislation. A law requiring a municipal corporation to pay a demand

which is without legal obligation, but which is equitable and just in itself, being founded upon a valuable consideration received by the corporation, is not a retroactive law, — no more so than an appropriation act providing for the payment of a pre-existing claim. The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the State, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasion.

*Judgment affirmed.*