White, J.
The contract between the trustees and the contractors, as set up in the answer, bound the former, on the acceptance of the work, to assess the value thereof, as ascertained by the rates at which it was to be performed, on all the lands abutting on the improvement. And the agreement on the part of the contractors, that they would receive the assessment in full payment of the work, was subject to the condition that the assessment should be made by the trustees in accordance with law and the agreement.
The assessment contemplated by the agreement was evidently a valid assessment, for the full amount due to the contractors under the contract.
By the adoption of the municipal code of May 7, 1869, the Mt. Auburn, Walnut Hills, and Clintonville special road district was created an incorporated village for special purposes. 66 Ohio L. 149, § 6.
By section 51 of that act the trustees of such villages were invested with the exclusive jurisdiction of all public roads, streets, and alleys constructed or to be constructed *441 within the limits of the corporation ; and they were authorized “ to lay out, establish, open, widen, improve, straighten, keep in order and repair roads, streets, and alleys.”
By section 54 it was provided that the “ trustees shall have power to make and publish, in the same manner as other corpox*ations, such by-laws, resolutions, and ordinances as to them shall seem necessary to carry into effect the foregoing powers; and shall have, in all respects, the like rights and remedies in the enforcement of such by-laws, resolutions, and ordinances as are herein given to other municipal corporations.”
The power of the trustees to assess the abutting property to pay for the improvement was subject to the limitation prescribed by section 542 of tbe municipal code. 66 Ohio L. 241. The section is as follows: “ In making a special assessment according to valuation, the council shall be governed by the assessed value of lots where the land is subdivided and the lots are numbered and recorded. Where there are lots which are not assessed for taxation, or there is land which is in bulk and not subdivided into such lots, the council shall fix the value of such lots or the front of such land to the usual depth of lots, by the average of twc blocks, one of which shall be next adjoining, on each side If there are xio blocks so adjoining, the council shall fix the value thereof, so that it will be a fair average of the assessed value of other lots in the neighborhood.”
The limitation contained in this section upoxx the power of makixxg assessments is applicable to assessments levied upon the property abutting on the improvement in proportion to its frontage, as well as to assessments levied upon such property in propox-tion to its taxable valuation. The City of Cincinnati v. Oliver et al., 31 Ohio St. 371.
The blocks 25 and 32, owned by the relator, were not subdivided into lots which were numbered and recorded. The usual depth of lots in the two adjoining blocks was one hundred feet; and it was the duty of the trustees, in assessing the px’operty of the relator, to have limited the assessment to a corresponding depth. Instead of doing so, how *442 ever, they extended the assessment to the entire depth of the' blocks, four hundred feet.
The assessment, therefore, was not made in accordance with law; and the contractors were not required, under their agreement with the trustees, to receive it in full payment for the work.
"Where the amount that could properly be raised by assessment was insufficient to pay for the work, section 543 prescribed the mode in which the deficiency was to be supplied. The section is as follows: “'In no case shall the tax specially levied and assessed upon any lot or lands for any improvement, amount to more than fifty per centum of the value of such lot or lands, after the improvement has been made, and all cost thereof exceeding said per centum that would otherwise be chargeable on such lot or lands, shall be paid by the corporation out of its general revenue
Had the trustees observed the statute, in making the assessment, the cost of the improvement over and above fifty per centum of the value of the portions of the blocks 25 and 32, subject to assessment, would have been payable out of the general revenue of the village; and by the annexation, the same liability, if not discharged, would have devolved upon the city.
The liability is claimed to have been discharged by the recovery of a judgment in favor of the contractors against the relator, subjecting the whole of the blocks to sale for the payment of the cost of the work.
It does not appear that the village was a party to the proceeding in which the judgment was rendered. But however this may haveb.een, it is manifest that a great wrong was done to the relator, by subjecting to sale property which was not by law subject to assessment. This error originated with the trustees in levying the assessment upon .the whole of the blocks, instead of restricting it to the depth of one hundred feet. The same ■ error was carried out in the proceedings to enforce the assessment.
The effect of the error was to exempt the village from *443 the portion of the cost of the improvement, which it ought to have borne, and to impose it upon the property of the relator. The object of the statute in question is to correct this wrong, and to relieve the relator of a burden, which, in justice, ought to be borne by the public. Of the power of the legislature to pass the statute we entertain no doubt. The principle upon which such legislation is founded was declared by this court, in the case of The State ex rel. v. The City of Circleville, 20 Ohio St. 362. It has also been recognized by the Supreme Court of the United States, in the ease of New Orleans v. Clark, 5 Otto, 644. And the same doctrine is found in many other authorities, to which it is not necessary hereto refer. Where the public, through its agents, wrongs an individual, it ought, upon the plainest principles of justice, to be required to make reparation.
The objection suggested in argument, that the relief, if granted at all, should have been granted by a general law, is not well taken.
The subject-matter of the act is of a local and temporary nature, and where the statute granting the relief does not confer corporate power, it may be a special act. State ex rel. v. The Judges, 21 Ohio St. 1; State ex rel. v. Davis et al., 23 Ohio St. 434; State ex rel. v. Covington, 29 Ohio St. 102.
There is no validity in the claim set up by the defendant, that there is no money in the treasury of the city with which to pay the warrant, should one be issued.
The duty enjoined on the defendant as auditor of the city to issue the warrant is not made dependent on whether there is money in the treasury to pay the warrant. On ascertaining the amount that ought to be paid by the city, in the mode prescribed, he is directed to issue his warrant upon the city treasurer for the amount so ascertained, to be paid out of the general fund of the city, and the same is-declared to be a sufficient voucher. The duty of paying the warrant is devolved on the treasurer, and whether he has funds or not with which to take up the warrant is no *444 concern of tbe auditor in discharging the duties imposed upon him by the statute.

Peremptory writ awarded.

Okey, J.,
having been of counsel in the original suit, took no part in the decision of this case.