Doyle, J.
The matter in controversy here is the same that was before us in the State v. Staley, 38 Ohio St. 259. The fact that this money was still in the county treasury, unappropriated, was found in that case, and there is nothing in the present case to show that that is not still true.
It appears from the admitted facts in the present case, that in the settlement of August, 1881 (in fact made September 23, 1881), the auditor of Hamilton county found that, prior to that time certain expenses had been incurred by Hamilton county, in the collection of taxes, and in suits involving the validity of taxes, which had been wholly paid by the county ; • and, assuming that the state should pay its proportion of such expenses, deducted from the amount which would otherwise be due the state, and which the certificates and abstract of settlement would show to be the amount which should be paid by the county treasurer to the state treasurer, the sum of $11,534.60.
This amount was arrived at in this way : First. In 1861, the county paid to its auditor, as extra compensation, for placing upon the county duplicate property which had been omitted *211 therefrom the sum of $620.00, and in 1873, extra compensation was paid to the county auditor for like services, in the sum of $6,745.84, making in all $7,365.84. Of this amount it is claimed the pro rata share of the state was $1,156.37. Second. In 1878 and 1879 the county commissioners employed persons to hunt up property omitted from the tax duplicate, which ought to be taxed, and to furnish the evidence to the auditor upon which he should charge such property upon the tax duplicates. These persons were paid for such services the sum of $3,904.93, and the state’s pro rata share thereof it is claimed was $613.03. Third. Between April 1865, and July 1879, the county paid as attorneys’ fees and other expenses, in actions against the treasurer and auditor for performing or attempting to perform their duties in the collection of the public revenue, the sum of $11,034.10; and also in the prosecution by the treasurer of the proceeding to enforce the eollection of taxes, authorized by section 83, of the act of April 5, 1869, S. & C. 1454, the sum of $1,996.49, amounting in all to $13,030.59, of which the state, it is claimed, should pay its proportion, to wit, $2,045.78. Fourth. Between April, 1870, and September, 1880, there was paid by the county to local collectors, for the collection of delinquent personal taxes, the sum of $49,111.73, and the claim is that of this amount the state should pay its share, to wit, $7,710.52.
The sum of these four amounts, thus charged to the state in the-settlement of 1881, is the amount in controversy now.
The matter specially involved herein is the true construct tion and effect of the several statutes under which the above expenditures are claimed to have been made. It is conceded that if the state can be charged with any part of them, it must 1 be by virtue of some statute, either expressly or by necessary implication, authorizing such charge.
It is quite clear to us that the claim.of the county under the first and fourth enumerations above, and the last item of the third enumeration, must be disallowed. The $620 paid to the auditor in 1861, the defendant concedes, was without authority of law, so far as the state is concerned, and withdraws *212 that item. The $6,745.84 were expended under the authority of the act of May 6, 1869 (66 Ohio L. 122) entitled “ An act supplementary to the act prescribing the fees of county auditors, passed May 1,1862, as amended April 12,1865, as amended April 17,1867.” It provides for additional compensation to be paid out of the county treasury, for placing upon the duplicate all tax omissions, &c., a sum equal to five per cent, upon the total amount of such tax omissions paid into the county treasury.
The additional compensation provided for by this act, was payable, precisely as the general compensation provided by the act (to which it is supplementary) of April 17,1867, to wit: out of the county treasury upon the order of the county commissioners.
The law authorizing the employment of local collectors to collect delinquent personal taxes, under which the expenditures in the fourth enumeration were made, was passed March 20,1866 (63 Ohio L. 43; S. & S. 780).
Section one of that act provides as follows:
“ It shall be the duty of the several county commissioners in this state, semi-annually, at their first meeting after the return of the delinquent list of personal property, to cause the same to be read, and said commissioners may at any time, direct said treasurer to proceed in the manner elsewhere provided in this act, to collect the whole or any portion of the delinquent taxes due their county. The said commissioners, if, upon careful examination, they are satisfied the said delinquent taxes, or any part thereof, can be more certainly and economically collected by the personal application and efforts of local collectors, may empower their county treasurer to employ such collectors, and such number thereof, and for such compensation to be paid out of the county treasury, as will, in the opinion of said commissioners, insure the largest net proceeds from the collection of said delinquent taxes.”
It is claimed by the defendant that the provisions in this section that the compensation shall “ be paid out of the county treasury,” is the designation of the place where the payment is to be made, and not the fund out of which it is to be made..
*213 The answer is that the state is not liable to contribute to the payment of county officers or their assistants, except where such liability is created by statute. The state can, no doubt, through its legislature, subject itself to the provisions of a ■ general law, but it must be by express enactment. “ The state is not bound by the terms of a general statute unless it be so expressly enacted.” State ex rel. v. Board of Public Works, 36 Ohio St. 409.
The state has the right to impose upon the counties the duty of collecting its portion of the public revenue ; and of all of these statutes, it may be said that it (the state), is not liable for any of the fees, costs, or expenses therein provided for, except where it is made so in terms. It is not a very material matter to the people of the state where this burden is placed, if it is made uniform and applicable alike to all the counties of the state. It would operate unjustly, however, to exempt one county from a burden which is imposed upon others.
The fees of the county treasurers are provided for by general statute. Revised Statutes, § 1117. They consist of a percentage of all moneys collected. In Hamilton county these fees are collected for the sole use of' the county, as public moneys belonging to its treasury. It matters not whether those moneys are collected by the treasurer, by the voluntary payment of the citizen, by distraint, under the provisions of section 38, S. & C. 1454, or the act under consideration. In either case he is entitled to his percentage on the collection, and to subject the state or county to any additional charge must be by authority of some express enactment. The act of March 20, 1866, authorizes the commissioners to empower the treasurer to employ local collectors, but requires that they be paid out of the county treasury. Instead of being an authority to charge . airy part of such expense to the state we think it must be held to expressly impose such liability upon the county.
This is equally true of section 38, S. & C. 1454, under which the item of $1,996.49 arose. There is neither express nor implied authority found therein to deduct from the amount of taxes due the state, any expenses which may be incurred by the *214 treasurer in making the collection through the means furnished by that law.
The balance of the claim made by the county must be allowed.
It is conceded by the relator,- that the first item in the third enumeration above is correct, and that the state is properly chargeable with its share thereof. The expenditure was made under the authority of section 58, S. & 0.1460,'which expressly provides that the state shall be charged with its pro rata share thereof.
When the expenditures named in the second enumeration above were made there was no statute expressly authorizing-them. Whether the county commissioners had authority to bind the county or not by such contracts, it is clear that their action imposed no. liability upon the state. The contracts, however, were made, the services rendered, and paid for.
Thereafter, to wit, April 14, 1880, the legislature passed an act entitled “An act to more fully secure the taxation of real and personal property in the state of Ohio, and for levying-taxes thereon according to. its true- value. ” Section 1 provides- “ that whenever the hoard of county commissioners of any county in this state, containing a city of the first grade, of the first class, shall have employed any person or persons to- ascertain and furnish to the county auditor the facts and evidence-necessary to authorize him to subject to taxation any property Improperly omitted therefrom, no payment for such services shall he made to such person or persons, except in accordance-with the terms of the agreement between the county commissioners and such person or persons, and' such payment shall be made to such person or persons only out of the money actually paid into the county treasury as taxes on such omitted-property, and such compensation shall be apportioned ratably, by the the county auditor, among all the funds entitled to share-in the distribution of such taxes, including- the- state- itself, as well as the counties, townships, cities, villages, school districts and other organizations entitled thereto: Provided, however, that such employment.shall only he authorized as-to-any omissions occurring previous to- the passage of tins act.”
*215 So far as this case and the rights of the state are concerned, this section of the act is to be treated, and indeed it might as well have been so expressed, as legalizing the contracts already referred to, and authorizing the authorities of Hamilton county to deduct a ratable proportion of the expenses incurred from the moneys due the state from that county.
The subject-matter of it is, therefore, of a local and temporary nature, and the act valid within the rule established in State ex rel. v. Judges, 21 Ohio St. 1; State ex rel. v. Davis, 23 Ohio St. 434; State ex rel. v. Covington, 29 Ohio St. 102; State ex rel. v. Hoffman, 35 Ohio St. 435; State v. Board of Education, 38 Ohio St. 6. The objection that its provisions are retroactive is not well made. Art. 2, § 28. “ The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the state or any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and 1 thus protect vested rights from invasion.” Kumler v. Silsbec, 38 Ohio St. 445; 95 U. S. 644; Burgett v. Norris, 25 Ohio St. 308.
Whether the provisions of section 29, art. 2, of the Constitution (Fordyce v. Godman, 20 Ohio St. 1) have been complied with, or whether the act is governed by such provisions, are questions not raised by the record, and not involved herein.
To raise such question, it would be necessary to allege and prove that the act in question did not receive, on its passage, the votes of two-thirds of the members elected to each branch of the general assembly. In the absence of such allegation and proof, the presumption is that the law was properly passed.

Judgment accordingly.