BOARD OF COMMISSIONERS OF EVERGLADES DRAINAGE DIS-
TRICT, A CORPORATION, *Plaintiff in Error*, v. FORBES
PIONEER BOAT LINE, A CORPORATION, *Defendant in Er-
ror*.

Opinion Filed July 10, 1920.

Petition for Rehearing Denied July 28, 1920.

1.  The State Constitution is a limitation upon the power of the
    Legislature, and unless legislation duly passed be clearly
    contrary to some expressed or implied prohibition in the
    Constitution the courts have no authority to pronounce it in-
    valid.

2.  The United States Constitution is also a limitation upon the
    powers of the States.

3.  One who assails an act of the Legislature as unconstitutional
    has the burden of showing beyond a reasonable doubt that
    such act is in conflict with some designated provision of the
    State or Federal Constitution.

4.  The constitutional prohibition against the passage of *ex
    post facto* laws is confined to laws respecting criminal pun-
    ishment and has no relation to retrospective legislation of
    any other character.

5.  The constitutional provisions against impairing the obliga-
    tion of a contract apply only to voluntary contracts and not
    to obligations imposed by law without the assent of the
    party bound. That class of obligations aptly styled "quasi
    contracts" are not embraced within said provisions.

6.  The passage of retrospective or retroactive legislation in
    Florida is not in terms forbidden by the State or Federal
    Constitutions, and such legislation is therefore valid unless
    invalid for some reason other than because of its retrospec-
    tive nature.

7. Generally speaking, vested rights can not be disturbed by retrospective legislation, but in its application as a shield or protection, the term vested rights is not used in any narrow or technical sense or as importing a power of legal control, merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect and of which the individual could not be deprived arbitrarily without injustice.

8. Generally speaking, the moral aspect of the right claimed may be given consideration in determining whether such right is protected by the due process of law clause of the Constitution, and if not morally right, such claim may be taken away by legislation retrospective in its nature.

9. The Board of Commissioners of Everglades Drainage District is a public quasi-corporation, and as such a governmental agency of the State for certain definite purposes, having such authority only as is delegated to it by law. It, therefore, had no power to charge toll for the passage of boats through its locks until authorized to make such charge by Chapter 7865, Acts of 1919, but having assumed to make such charge and having collected tolls prior to said act, it was competent for the State to ratify and validate such unauthorized charge and collection of tolls, notwithstanding a suit was then pending against said board to recover tolls so paid.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment reversed.

*Glenn Terrell,* for Plaintiff in Error;

*Carson, Willard & Knight* and *Thomas B. Norfleet,* for Defendant in Error.

REAVES, Circuit Judge.—The defendant in error, which we shall herein call the Boat Line for brevity, sued the plaintiff in error, which we shall call the Board, in the Circuit Court of Dade County to recover stated sums of money paid by the Boat Line to the Board as toll for the passage of its boats through the locks maintained by the Board in one of the canals constituting the Everglades Drainage System. The declaration filed July 2, 1917, seeks to recover payments from August 1, 1913. Omitting the style of the court and cause, the declaration is as follows:

"Forbes Pioneer Boat Line, a corporation, by its attorneys, sues the Board of Commissioners of Everglades Drainage District, a corporation, for that, on to-wit: August 1, 1913, the said plaintiff then and there being a corporation, and as such was engaged in the business of transporting by boat passengers and freight from Fort Lauderdale, Florida, to Rita Island, and other places in said State, and from Rita Island and other places to Fort Lauderdale, Florida; that in the conduct of its said business it became and was necessary for the boats of plaintiff to pass over, through and upon the waters of North New River Canal, which said canal, under and by virtue of an act of the Legislature of the State of Florida, approved June 6th, 1913, was and is for certain purposes, under the supervision and control of the defendant; that said defendants and their predecessor have caused to be constructed across and upon said canal a certain lock in Broward County, Florida, within the Everglades Drainage District for the purpose, among other things, of controlling and regulating the flow of water through said canal; that on, to-wit: August 1, 1913, the said defendant, through its servants, agents and employees, wrongfully demanded of and received from the plaintiff the sum of

$6.50 for toll for passage through the said lock of one of its boats, and has since that date, upon many divers occasions, and up to the present time, regularly made charges and collected tolls from the plaintiff upon each and every boat belonging to plaintiff which passed through said lock in the amount of ten cents per lineal foot and in the aggregate sum of $864.00; that said sum so collected, and each item thereof, was wrongfully and unlawfully levied and collected. Wherefore plaintiff brings its suit and claims $1,250.00 damages."

A demurrer to this declaration was sustained, and from the final judgment in favor of the Board a writ of error was taken by the Boat Line to this court, and the judgment reversed on May 30, 1919. See Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 77 Fla. 742, 82 South. Rep. 346.

An examination of this opinion will disclose that the judgment was reversed for the reason that the Board had no power under the law to collect toll for the passage of boats through the canals and locks constituting said system of drainage. On the same day upon which this opinion was handed down the Legislature enacted into law Chapter 7865, Acts of 1919, amending Section 3 of Chapter 6456, Acts of 1913, and by said amendment expressly authorized said Board to "provide for and regulate the collection of a reasonable schedule of tolls for the use of the said canals and locks," and further providing that "all tolls heretofore collected for the use thereof being by this act legalized and validated." The further provisions of the amendment not necessary to be quoted show more fully the intent of the Legislature that the canals might be used for the purpose of commerce, and that the

Board might prescribe suitable regulations governing such use.

After the mandate was handed down the Circuit Court overruled the demurrer in obedience to the mandate of this court, and the defendant then filed a plea setting up the passage of said Chapter 7865, by virtue of which it was claimed that the said charges of toll had been validated and that the suit could no longer be maintained. A demurrer to this plea was sustained. Thereupon a judgment was entered in favor of the plaintiff for $649.21, principal and, $184,49 interest, and $17.37 cost, it having been agreed between counsel for the respective parties that the said sum of $649.21 had been paid, as claimed in the declaration. On this judgment the Board sued out a writ of error to this court.

The demurrer to the plea above mentioned raises the question of the constitutionality of that portion of Chapter 7865 which undertook to validate the charge and collection of the tolls in question.

The Act is attacked (a) as being an *ex post facto law;* (b) as impairing the obligation of a contract; and (c) as depriving the plaintiff of property without due process of law; and the various sections of the State and Federal Constitutions guaranteeing these rights are invoked, namely: Section 17, Bill of Rights; Section 12, Bill of Rights; Section 10, Article 1, U. S. Constitution; and 14th Amendment U. S. Constitution.

It is well to keep in mind that our State Constitution is a limitation upon power, and unless legislation duly passed be clearly contrary to some expressed or implied prohibition in the Constitution, the courts have no authority to pronounce it invalid. Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47.

We might add also that the Federal Constitution is a limitation upon the powers of the States, because "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Article 10, U. S. Constitution.

The inquiry then is whether or not the validation of the Act of said Board in exacting and receiving the tolls in question is prohibited by the State or Federal Constitution, and the well-settled rule is that the burden of showing beyond a reasonable doubt that the Act assailed is in conflict with some designated provision of the State or Federal Constitution rests upon the party assailing the Act. Lainhart v. Catts, *supra*.

Turning now to the various provisions of the organic law invoked by the Boat Line, let us determine their meaning, and application to the matter in issue.

(a) It is settled by the authorities that the prohibition against *ex post facto* laws is confined to laws respecting criminal punishment and has no relation to retrospective legislation of any other character. Johannessen v. United States, 225 U. S. 227, 56 L. Ed. 1066, 32 Sup. Ct. Rep. 613; Cooley's Const. Lim. (7th Ed.) 373; 12 C. J. Sec. 805, p. 1099.

(b) It is also settled that constitutional provisions against impairing the obligation of a contract do not apply to obligations imposed by the law without the assent of the party bound, even though by a legal fiction they may be enforced in an action in form *ex contractu*. In other words, the class of contracts protected are voluntary—that is, based on the assent of the parties, expressly or impliedly given. That class of obligations aptly

styled "quasi contract" are not embraced within the constitutional guarantee against the passage of a law vio lating the obligation of a contract. Louisiana *ex rel.* Folsom v. Mayor, etc., of City of New Orleans, 109 U. S. 285, 27 L. Ed. 946, 3 Sup. Ct. Rep. 211; State v. City of New Orleans, 38 La. Ann. 119, 58 Am. Rep. 168; Freeland v. Williams, 131 U. S. 405, 33 L. Ed. 193, 9 Sup. Ct. Rep. 763. Mexican Nat. Ry. Co. v. Mussette, 86 Tex. 708, 26 S. W. Rep. 1075, 24 L. R. A. 642; 12 C. J., p. 1053, Secs. 690, 691; 6 R. C. L., p. 326, Sec. 316.

(c)   We now come to consider the question of whether the validating act under consideration deprives the Boat Line of property without due process of law. It should be kept in mind that neither the Federal Constitution nor the Constitution of Florida in terms forbids the passage of retroactive or retrospective laws, and such laws are therefore valid unless they violate some constitutional guarantee; or, in other words, unless invalid for some reason other than because of their retroactive nature. Cooley's Const. Lim. (7th ed.) 529; 12 C. J., p. 1084, Sec. 779; Kentucky Union Co. v. Commonwealth of Kentucky, 219 U. S. 140, 55 L. Ed. 137, 31 Sup. Ct. Rep. 171.

In the instant case it is insisted that the Boat Line had a vested right of action against the Board to recover back the tolls paid, of which it could not be constitutionally deprived. It is true that generally speaking vested rights are protected by the due process of law clause of the State and Federal Constitutions. Cooley's Const. Lim. 517, *et seq.*; 12 C. J., p. 956, Sec. 486. The difficulty often comes, however, in determining what is a vested right in the sense secured by the constitutional guarantee. No useful purpose would be accomplished by attempting a general definition, nor by quoting general definitions as given

by the authorities. For a lengthy and enlightening discussion see Cooley's Const. Lim. (7th Ed.) 508, *et seq.*
From this author we quote briefly as follows: "The chief restriction upon this class of legislation is that vested rights must not be disturbed, but in its application as a shield or protection the term 'vested rights' is not used in any narrow or technical sense or as importing a power of legal control merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect and of which the individual could not be deprived arbitrarily without injustice." For other definition see 12 C. J., p. 955, Sec. 485; 6 R. C. L., p. 308, Sec. 294.

In all the definitions and text books, as well as the adjudicated cases, the moral aspect of the right claimed is given consideration in determining whether the right is protected or not, and the rule generally announced is that if the claim is not morally right it may be taken away by legislation retrospective in its nature. For instance, defects in deeds or in the acknowledgment of deeds which it would be unjust for one to take advantage of may be cured. Downs v. Blount, 95 C. C. A. 289, 170 Fed. Rep. 15, 31 L. R. A. (N. S.) 1076, and cases cited in note.

Also, moral obligations of counties and municipalities have frequently been made binding by retrospective laws. Utter v. Franklin, 172 U. S. 416, 43 L. Ed. 498, 19 Sup. Ct. Rep. 183; Jefferson City Gas-Light Co. v. Clark, 95 U. S. 644, 24 L. Ed. 521.

As stated by the Supreme Court of Massachusetts, a party can not have a vested right to do wrong. Foster v. Essex Bank, 16 Mass. 244. And by the Supreme Court of New Jersey, "Laws curing defects which would other-

wise operate to frustrate what must be presumed to be the desire of the party affected cannot be considered as taking away vested rights. Courts do not regard rights as vested contrary to the justice and equity of the case." State v. Newark, 27 N. J. L. 185. See also 6 R. C. L., page 311, Sec. 298, from which we quote: "It is axiomatic that no man has a vested right to do wrong. This principle may be applied in some instances in order to test the validity of retroactive legislation."

Cooley's Const. Lim. (7th Ed.), on page 533, qotes from Beach v. Walker, 6 Conn. 190, as follows: "The law undoubtedly is retrospective, but is it unjust? All the charges of the officer on the execution in question are perfectly reasonable and for necessary services in the performance of his duty; of consequence they are eminently just, and so is the act confirming the levy. A law, although it be retrospective, if conformable to entire justice, this court has repeatedly decided is to be recognized and enforced."

Again, from the same author on page 535, we quote: "On the same principle legislative acts validating invalid contracts have been sustained. When these acts go no further than to bind a party by a contract which he has attempted to enter into, but which was invalid by reason of some personal inability to make it; or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law, the question which they suggest is one of policy and not of constitutional power."

Again, the same author on page 536 quotes from the case of Goshen v. Stonington, 4 Conn. 209, 10 Am. Dec. 121, as follows: "That where a statute is expressly retroactive and the object and effect of it is to correct an inno-

cent mistake, remedy a mischief, execute the intention of the parties and promote justice, then both as a matter of right and of public policy affecting the peace and welfare of the community the law should be sustained."

These authorities abundantly justify us in looking to the facts of the case at bar and determining whether the act in question is morally right as an aid to solving the question of whether it violates a constitutional guarantee. Before doing so, however, we might call attention to the fact that not all of the authorities agree that vested rights are always protected by the guarantee in question, but some instead of trying to determine what is a vested right, lay down the rule that rights vest subject to the equity against them and may be divested under proper circumstances. 2 Kents Com., p. 415; Grim v. Weissenberg S. D., 57 Pa. St. 433, 98 Am. Dec. 237.

In this case it is said that "it would be a nice and difficult task to trace accurately the boundary line between the domain of authorized and prohibited legislation on this subject;" but the court had no difficulty in sustaining an act which validated an unauthorized levy and collection of taxes for school purposes. Both lines of reasoning reach the same result.

Turning now to the facts of the case at bar, the court takes judicial knowledge of the various laws enacted for the drainage of the Everglades, and also that a system of canals of great size and depth has been constructed. That such canals are suitable for navigation as well as adapted to drainage is apparent from the fact that plaintiff is suing for the recovery of tolls paid for the passage of its boats through the locks, and also from the fact that the Legislature of 1919 recognized the value of such

canals for transportation and authorized the Board to regulate such transportation and charge toll.

For three years, according to the declaration, the plaintiff's boats operated on one of these canals, passing through the locks constructed, maintained and operated by the defendant. That locks of the magnitude of which these must of necessity be are not constructed, maintained, or operated without cost, goes wtihout saying. The plaintiff's contribution to this cost was the toll which it paid and for which it received value, both in facilities for transportation and in service by the operation of the locks. It engaged in commerce upon the waters in question as a business enterprise, and from the fact that the business was continued for three years, as shown by the declaration, and is doubtless still continuing, we may assume that the enterprise proved profitable. Moreover, it doubtless voluntarily paid the toll charged. In other words, it used the canals and locks because it chose to use them, paid the price charged for the service received, and received value for what it paid.

It so happens that the attempted contract by which tolls were charged and paid was not a contract because the agency of the State, namely: The Board was not authorized by the State to charge the toll in question. Presumably as soon as this was called to the attention of the Legislature, possibly by the suit of plaintiff's in this case, the Legislature corrected the defect and gave the Board ample power to charge toll in the future, and also ratified the action of the Board in assuming to charge toll in the past. That this act is a valid exercise of legislative power seems clear, both on principle and authority. On the prior writ of error we held that "the Board of Commissioners of Everglades Drainage District is a pub-

lic quasi corporation, and as such a governmental agency of the State for certain definite purposes, having such authority only as is delegated to it by law." We there held that the Board had been granted no power to charge toll, therefore it had no power. In other words, the agent of the State acted in the name of the State without authority. The Act in question not only conferred the authority for such action in the future, but ratified the unauthorized acts of the past. That such ratification was not inhibited by the Constitution is settled by the case of United States v. Heinszen & Co., 206 U. S. 370, 51 L. Ed. 1098, 27 Sup. Ct. Rep. 742.

In this case it appears that duties had been illegally collected upon shipments of goods to and from the Philippine Islands and Porto Rico for a number of years following the Spanish-American War under an order of the President, which order was held to be without power and the duties so collected held to be unauthorized in several cases then and previously pending before the Federal Courts. After the courts had held such duties to be unauthorized Congress passed a law ratifying and validating the same and enacting a tariff for the said Islands. Mr. Justice WHITE (now Chief Justice) disposed of the contentions made against the law by holding that the agents of the government had simply acted beyond their authority in making the collection, and that Congress had the power to ratify such acts, even after it had been judicially determined that the power did not exist and that the claimants might recover the sums so paid. This opinion quotes from Kent in his commentaries, volume 2, page 415, as follows: "The legal rights affected in those cases by the statutes were deemed to have been vested subject to the equity existing against them, and which the

statutes recognized and enforced." Under this quotation is cited a number of authorities, including Goshen v. Stonington, *supra.* See also Hamilton v. Dillon, 21 Wall. (U. S.) 73, 22 Law Ed. 528; Mattingly v. District of Co-lumbia, 97 U. S. 687, 24 L. Ed. 1098; Town of Bellevue v. Peacock, 89 Ky. 495, 12 S. W. Rep. 1042, 25 Am. St. Rep. 552; Nottage v. City of Portland, 35 Ore. 539, 58 Pac. Rep. 883, 76 Am. St. Rep. 513. The following decisions of this court are also helpful: Taylor v. Tennessee & Florida Land & Investment Co., 71 Fla. 651, 72 South. Rep. 206; Cranor v. Volusia County Com'rs., 54 Fla. 526, 45 South. Rep. 455; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88. 82 South. Rep. 770.

It should be said that the various decisions legalizing the obligations of counties and other political subdivisions of the State, or public corporations, or public quasi corporations, while persuasive, are not decisive of the question here involved, because in such instances the State is dealing principally with its own rights, or rights of its governmental subdivision, and we have not overlooked the contention of counsel for the Boat Line that a right of action having accrued in its favor has become vested and can not be divested. The authorities stated relating to the question of vested rights and the divesting of rights fully cover this contention. It will be noted that the argument, if sound, would give more than a right of action. It would give a right of recovery. This is not a case of tort, nor otherwise of unliquidated damages. It is an effort to recover definite sums of money paid out, and if it be conceded that the Boat Line has a vested right of action, then it would have a vested right of recovery, because the action involves the recovery of the fixed sum about which there is no contention or dispute.

For the reasons stated, the judgment is reversed.

TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

BROWNE, C. J., dissents.

WEST, J., disqualified.